[Cite as *State v. Foster*, 2015-Ohio-3401.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY


STATE OF OHIO,

      PLAINTIFF-APPELLEE,

      v.

WILLIE J. FOSTER,

      DEFENDANT-APPELLANT.

CASE NO 1-14-54

O P I N I O N

Appeal from Allen County Common Pleas Court
Trial Court No. CR2013 0369

Judgment Reversed and Cause Remanded

Date of Decision: August 24, 2015


APPEARANCES:

    *Dustin M. Blake* for Appellant

    *Jana E. Emerick* for Appellee

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Willie Foster ("Foster") brings this appeal from the judgment of the Court of Common Pleas of Allen County denying his motion to suppress. For the reasons set forth below, the judgment is reversed.

{¶2} On September 18, 2013, Officer Matt Woodworth ("Woodworth") and Officer Amy Glanneman ("Glanneman") of the Lima Police Department were dispatched to 1224 ½ East Market Street. Tr. 11, 39. The police had been contacted by the alarm company due to an alarm sounding at the house. Tr. 12, 39. No emergency call was received from anyone at the residence or the neighbors. Tr. 18. The officers checked the exterior of the house upon their arrival. Tr. 12, 39. Glanneman noticed that the front door of the house was "cracked open" and Woodworth found the garage door to be closed, but unsecured. Tr. 17, 40. The officers then decided to clear the home to check for intruders. When they entered the garage, they smelled marijuana and realized that they should obtain a search warrant. Tr. 14-16, 40. However, they first proceeded to check the home for intruders. Tr. 16, 40.

{¶3} The officers entered the house through the open front door. When they stepped inside the house, they detected a stronger odor of raw marijuana and saw an ashtray containing burnt marijuana blunts and numerous plastic sandwich

2

baggies, some with missing corners.[1] Tr. 41-42. The officers determined that they had probable cause for a search warrant and they intended to get one after first clearing the house of possible intruders. Tr. 42. In the bathroom, Glanneman could not see onto a large shelf in the back of the closet, which was large enough to conceal a person. Tr. 20. Woodworth reached up on the shelf and pulled down a Royal Crown Whiskey bag that contained loose cash. Tr. 21. Woodworth then looked up on the shelf, observed more money and a loosely tied white plastic grocery bag. Tr. 43. Woodworth then pulled the bag off the shelf, untied it, peered inside it, and found a large amount of crack cocaine. Tr. 23, 44. Woodworth admitted that the bag was not large enough to contain a person and that he could not see what was in the bag without unfastening it. Tr. 45. After the officers had finished checking the house for intruders, they phoned a supervisor and a search warrant was obtained. Tr. 23. Glanneman admitted that during the search of the house, the purpose had at one point changed from looking for bodies to looking for illegal drugs. Tr. 24. Woodworth also admitted that during the search, his sweep of the house changed to a search for drugs prior to the warrant being issued. Tr. 48. The warrant was based in part on the cocaine found in the grocery bag. Glanneman's affidavit in support of the warrant stated that

---

[1] Despite the testimony of Glanneman that the smell of marijuana in the garage was strong and that it "was very, very strong" in the house, no marijuana or marijuana blunts were listed on the inventory of items found in either the house or the garage during the search after the warrant was obtained. Tr. 30, Inventory from Search included in Doc. 11.

**Located near the money, was a dark colored cloth bag, and a plastic grocery bag. Officers removed the bags to check them, and located a large amount of cocaine in one bag, and a large amount of money inside the other bag. At this point officers had searched the entire residence, and located no intruders, so officers left the items inside the residence, secured the residence, and called the West Central Ohio Crime Task Force.**

Affidavit for Search Warrant. Pursuant to the warrant, officers seized the cocaine in the bathroom along with other drugs and drug paraphernalia.

{¶4} On October 18, 2013, the Allen County Grand Jury indicted Foster on one count of possession of cocaine in an amount exceeding 100 grams, a major drug felony of the first degree in violation of R.C. 2925.11(A) & (C)(4)(f). Doc. 2. Foster initially entered a written plea of not guilty. Doc. 6. On December 13, 2013, Foster filed a motion to suppress the evidence found in the home. Doc. 18. A hearing was held on the motion on December 20, 2013. Doc. 26. On December 23, 2013, the trial court denied the motion to suppress. *Id.* On March 10, 2014, Foster withdrew his not guilty plea and entered a plea of no contest to an amended plea of possession of cocaine without the major drug offender specification. Doc. 76. As part of the negotiated plea, the parties stipulated that Foster would receive no more than seven years in prison as the penalty. *Id.* The trial court accepted Foster's no contest plea and entered a judgment of conviction. Doc. 77. A sentencing hearing was held on November 3, 2014, and the trial court imposed a sentence of seven years in prison. Doc. 85. Foster filed his notice of appeal on

4

December 3, 2014. Doc. 88. On appeal, Foster raises the following assignment of error.

> **The trial court erred in overruling [Foster's] motion to suppress certain evidence and its fruits, said evidence having been obtained by an unreasonable search and seizure under the Fourth Amendment to the Constitution of the United States.**

{¶5} The sole assignment of error in this case raises the issue of whether the trial court erred in denying Foster's motion to suppress the cocaine found in the bag. "An appellate review of the trial court's decision on a motion to suppress involves a mixed question of law and fact." *State v. Fittro*, 3d Dist. Marion No. 9-14-19, 2015-Ohio-1884, ¶ 11. Here, the facts are not disputed. The officers admit that they were searching the house without a warrant, that they opened the bag without a warrant, and that they should have obtained the warrant before opening the bag.[2] Thus, the issue before this court is solely one of law – should the evidence be admissible?

{¶6} The first step is to determine whether the officers had the authority to be in the home at all. There is no question that they entered the home without a warrant.

> **The well settled law under the Fourth and Fourteenth Amendments as interpreted by the United States Supreme Court is that a search conducted without a warrant issued upon probable cause is "per se unreasonable ... subject only to a few specifically established and well-delineated exceptions." Katz v.**

---

[2] The officer admitted upon cross examination that in retrospect, he should have stopped and obtained the warrant before he opened the bag because it was not big enough to contain a person, which was the reason for the search being conducted.

> **United States (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576; Coolidge v. New Hampshire (1971), 403 U.S. 443, 454-455, 91 S.Ct. 2022, 29 L.Ed.2d 564; Chambers v. Maroney (1970), 399 U.S. 42, 51, 90 S.Ct. 1975, 26 L.Ed.2d 419. The Court has further determined that "[b]efore agents of the government may invade the sanctity of the home, the burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries." Welsh v. Wisconsin (1984), 466 U.S. 740, 750, 104 S.Ct. 2091, 80 L.Ed.2d 732. "Exigent circumstances" denotes the existence of " 'real immediate and serious consequences' " that would occur were a police officer to " 'postpone[ ] action to get a warrant.' " Id . at 751, quoting McDonald v. United States (1948), 335 U.S. 451, 459-60, 69 S.Ct. 191, 93 L.Ed. 153 (Jackson, J., concurring). This includes situations where there is a "need to protect or preserve life or avoid serious injury." Mincey v. Arizona (1978), 437 U.S. 385, 392, 98 S.Ct. 2408, 57 L.Ed.2d 290.**

*State v. Myers*, 3d Dist. Marion Nos. 9-02-65, 9-02-66, 2003-Ohio-2936, ¶ 8.

" 'The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency.' " *Mincey v. Arizona* (1978), 437 U.S. 385, 392–393, 98 S.Ct. 2408, 57 L.Ed.2d 290, (quoting *Wayne v. United States* (C.A.D.C.1963), 318 F.2d 205, 212). However, a "warrantless search must be 'strictly circumscribed by the exigencies which justify its initiation.'" *State v. Applegate*, 68 Ohio St.3d 348, 350, 1994-Ohio-356, 626 N.E.2d 942 (quoting *Terry v. Ohio*, 392 U.S. 1, 26, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

{¶7} Here, the officers were sent to the home by the alarm company after an alarm was sounded indicating an intruder in the home. The police noticed that the front door was "cracked open." Tr. 13. Glanneman testified that she pushed

6

open the door and announced herself, but there was no response to her call. Tr. 17. Glanneman admitted that there was no indication of any emergency outside of the alarm and that the alarms can be false alarms. However, to be safe, they decided to search the home for people to see if anyone was there. Tr. 19. Both Glanneman and Woodworth indicated that they generally check homes for intruders where an alarm has sounded and there are indications that the home is not secure. While there may not have been overwhelming evidence that exigent circumstances existed, there was some competent credible evidence to support that conclusion, so the trial court did not abuse its discretion in finding that the officers could search the home for intruders due to the exigent circumstances.

{¶8} This then leads to the question of whether the officers could lawfully open the bag. The answer to that question is no. Both Glanneman and Woodworth testified that the bag was too small to contain a hidden person and that the bag had to be manipulated to see the contents. This is a warrantless search that was not justified by the exigent circumstances. Even the State agrees that this was improper and the trial court held such.

> **In looking in the bag, Woodward [sic] exceeded the scope of the allowable search for persons. It was not necessary for Woodward [sic] to look in the bag in order to alleviate the emergency and the dangers associated with the suspected home invasion and search for persons.**

Dec. 23, 2013, Judgment Entry, 9. We agree that the search of the bag was an improper warrantless search.

7

**{¶9}** "Although we find that the search and seizure violated the Fourth Amendment, it is well-settled that not all Fourth Amendment violations give rise to suppression of the evidence illegally obtained." *State v. Dulaney*, 3d Dist. Paulding No. 11-12-04, 2013-Ohio-3985 ¶ 21, 997 N.E.2d 560. The trial court in this case held that the evidence was admissible because of the inevitable discovery exception to the exclusionary rule. "The inevitable discovery factor 'permits the government to remove the taint from otherwise poisoned fruit by establishing that the unlawful act from which it resulted was not a sine qua non of its discovery.'" *U.S. v. Griffin*, 502 F.2d 959 (6th Circ 1974) (certiorari denied). For the inevitable discovery exception to the warrant to apply, the state must show (1) "that the police possessed the leads making the discovery inevitable at the time of the misconduct and (2) that the police were actively pursuing an alternate line of investigation prior to the misconduct." *State v. Keith*, 178 Ohio App.3d 46, 2008-Ohio-4326, 896 N.E.2d 764, ¶ 10 (2d Dist.). The rule may not be used however, to rehabilitate evidence seized without a warrant. *Id*. at ¶14. "To hold otherwise would justify, if not encourage, warrantless searches and seizures." *Id*. "One of the purposes of the exclusionary rule is to deter shortcuts of the search warrant requirement of the Fourth Amendment." *Id.* at ¶ 11.

**{¶10}** In this case, the officers were searching for people and had seen multiple items that might have provided probable cause for a search warrant. The officers testified that they knew they needed a warrant to search for drugs and that

8

they intended to get one after they made sure there was no one in the home. The officers also testified that they knew the bag was too small to hold a person and that the bag had to be removed from the shelf and manipulated to see the contents. The officers also admitted that at some point during the sweep of the home for people, they began searching for evidence of drugs. They were aware that they should have a warrant prior to opening the bag, but proceeded without one anyway. After they saw the cocaine, they called the drug task force and a warrant was obtained.

{¶11} Another problem with allowing the evidence to be used in this case is that the admission was based upon the theory that the evidence would have inevitably been discovered when the search was conducted pursuant to the warrant. However, the affidavit in support of the warrant included the information that the officers had removed the bag from the shelf, looked inside of it, and saw cocaine. In other words, one of the reasons given as a basis for the warrant was the evidence seen without a warrant in violation of the Fourth Amendment. Evidence seized during the execution of a valid search warrant is not admissible if the warrant was issued by what officers observed while performing an illegal search. *State v. Carter*, 69 Ohio St.3d 57, 67-68, 1994-Ohio-343, 630 N.E.2d 355.

> **The exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of an illegality, or "fruit of the poisonous tree." *Nardone v. United States* (1939), 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307. The**

> **reason for the rule is the concern that if derivative evidence were not suppressed, police would have an incentive to violate constitutional rights in order to secure admissible derivative evidence even though the primary evidence secured as a result of the constitutional violation would be inadmissible. See Katz, Ohio Arrest, Search and Seizure (3 Ed.1992), Section 2.07. Justice Frankfurter explained in *Nardone*, "To forbid the direct use of methods thus characterized but to put no curb on their full indirect use would only invite the very methods deemed 'inconsistent with ethical standards and destructive of personal liberty.'" *Nardone, supra* at 340, 60 S.Ct. at 267, 84 L.Ed. at 311.**

*Id*. at 67.

{¶12} Likewise, The United States Supreme Court in *Murray v. United States*, 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed. 2d 472 (1988), held that evidence observed illegally need not be excluded if the evidence is later discovered during the execution of a valid search warrant if that warrant was issued solely on information *wholly* unconnected to the prior entry. *Id*. (emphasis added). The Court held that in order for the evidence to be admissible, the State must show that 1) no information presented in the affidavit for the warrant was seen during the illegal search and 2) the decision to seek the warrant was not prompted by the results of the illegal search. *Id*.

{¶13} The argument presented by the States is that that since the officers were going to get a warrant, the evidence would have been discovered anyway, so it should be admitted even though it was found through an improper search. The problem with that argument is that to follow it to its logical conclusion would result in an officer never being required to first obtain a warrant as long as he or

she had probable cause for one. This is contrary to the Fourth Amendment. "[A]bsent any of the narrowly limited exceptions * * * to the search warrant requirement, police who believe they have probable cause to search cannot enter a home without a warrant merely because they plan subsequently to get one." *Griffin*, *supra* at 961. This same logic applies to opening a container which is not within the search permitted by the exigent circumstances.

> **The assertion by police (after an illegal entry and after finding evidence of crime) that the discovery was 'inevitable' because they planned to get a search warrant and had sent an officer on such a mission would as a practical matter be beyond judicial review. Any other view would tend in actual practice to emasculate the search warrant requirement of the Fourth Amendment.**

*Id*.

{¶14} This court has previously held that the likelihood that a search warrant would be issued if requested does not provide for inevitable discovery of evidence. *State v. Pearson*, 114 Ohio App.3d 153, 682 N.E.2d 1077 (3d Dist. 1996). In *Pearson*, the trial court denied a motion to suppress the admission of a blood sample taken without a warrant. The State argued that the sample was admissible because they could have obtained a sample with a warrant. This court held as follows.

> **"While there was undoubtedly sufficient probable cause to obtain a search warrant * * * in this case, we find that the mere fact that a search warrant would in all probability have been issued on request cannot be considered as the implementation of investigative procedures that would have ultimately led to the**

11

> **'inevitable' discovery of the evidence. It seems to us that any other interpretation would pose a significant threat to the Fourth Amendment warrant requirement with its corollary magisterial determination of probable cause."**
>
> **\* \* \***
>
> **We believe the same logic follows in the instant case. In other words, the state's argument would obviate any Fourth Amendment warrant requirement as long as it could be shown later that a warrant would in all probability have been obtained. The fact that the second blood sample could have or would have been admitted at trial does not change the fact that defendant's conviction was based on illegally obtained evidence. Moreover, the fact that a warrant was eventually issued cannot be considered as the implementation of investigative procedures which would have ultimately led to the discovery of the blood evidence. We therefore conclude that the September 12, 1994 blood sample is not admissible evidence that would have been "inevitably" discovered pursuant to a lawful search warrant.**

*Id.* at 163. Likewise, the Tenth District determined that the inevitable discovery doctrine exception does not apply when the argument of the government is that they had probable cause for the search and could have obtained the warrant. *State v. Alihassan*, 10th Dist. Franklin No. 11AP-578, 2012-Ohio-825. *See also U.S. v. Souza*, 223 F.3d 1197, 1203 (C.A. 10, 2000) ("To apply the inevitable discovery doctrine whenever police could have obtained a warrant, yet chose not to, would essentially eliminate the warrant requirement and encourage police to proceed without a neutral and detached magistrate's probable cause determination"); *State v. Coyle*, 4th Dist. Ross No. 99 CA 2480, 2000 WL 283073 (Mar. 15, 2000); *U.S. v. Echegoyen*, 799 F.2d 1271 (C.A. 9, 1986), 1280 ("to excuse the failure to obtain

a warrant merely because the officers had probable cause and could have inevitably obtained a warrant would completely obviate the warrant requirement of the Fourth Amendment"); and *U.S. v. Johnson*, 22 F.3d 674 (C.A. 6, 1994), 683 ("to hold that simply because the police could have obtained a warrant, it was therefore inevitable that they would have done so would mean that there is inevitable discovery and no warrant requirement whenever there is probable cause").

{¶15} Here, the officers were permitted to be in the home for the sole purpose of searching for people. They knew the bag was not hiding a person and that they had no search warrant for any purpose. They admitted that they were aware before opening the bag that they needed a search warrant.[3] Yet they purposely proceeded to search the bag. Although the officers may have had probable cause to obtain a search warrant, they did not have a warrant at the time of the search. Additionally, this case is further complicated by the fact that the subsequent warrant that was obtained was at least in part based upon the illegally discovered evidence. Because the "fruits" of the illegal search were included as a basis for the warrant, the warrant itself was tainted and we have no way of knowing whether a warrant would have been issued in this case absent the statement that they had found cocaine. Both the U.S. Supreme Court and the

---

[3] The knowledge that they needed a search warrant, but decided to proceed without one would defeat any good faith exception since they were not acting upon a mistaken belief that the search was permissible. They knew it was not before they proceeded to open the bag.

Supreme Court of Ohio have held that warrants based in part upon the fruits of an illegal search cannot be used as a basis to rehabilitate evidence otherwise illegally obtained.[4]   Additionally, this court and multiple other courts have held that the inevitable discovery exception to the warrant requirement does not apply merely because the officers could have obtained a warrant, intended to obtain a warrant, or later obtained a warrant.  To allow the admission of the evidence obtained in this case without a warrant would allow for any search without a warrant merely because one might be obtained later.  Based upon the undisputed facts in this case, the trial court erred in failing to suppress the evidence in the bag pursuant to the inevitable discovery exception.  The assignment of error is sustained.

{¶16} Having found error prejudicial to the defendant, the judgment of the Court of Common Pleas of Allen County is reversed and the matter is remanded for further proceedings in accord with this opinion.

*Judgment Reversed and*
*Cause Remanded*

**SHAW, J., concurs in judgment only.**

**ROGERS, P.J., Concurring Separately.**

{¶17} I agree with the conclusion reached by the majority in this case.  I write separately only to state that I would also suppress based on the unauthorized entry into the residence.

---

[4] *Murray v. United States, supra* and *State v. Carter, supra.*

14

{¶18} In my opinion, under the circumstances of this case, an attempt to contact the owner or resident of the property must be made or the alleged "exigent circumstances" exception is not available to the police. The police had been contacted by the alarm company which means that information as to the owner/occupant was readily available.

{¶19} Further, the majority admits that evidence of exigent circumstances was not overwhelming. However, they persist by finding "some credible evidence to support that conclusion." (Majority Opin., ¶ 7). Any credibility of the law enforcement officers is defeated by the claim of a smell of raw marijuana in the *closed* garage[5], which smell they claim was stronger in the house. Mysteriously, no raw marijuana was found, even with execution of the search warrant. Nor was this discrepancy even noticed or discussed by the trial court.

**/hlo**

---

[5] The trial court actually made the finding that the garage was "not unlocked." (Docket No. 26, p. 2).