[Cite as *State v. Bolen*, 2016-Ohio-7821.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                       CASE NO.  13-16-01

      v.

BRIAN P. BOLEN,                            O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Seneca County Common Pleas Court
Trial Court No. 13-CR-0134

**Judgment Affirmed**

Date of Decision:   November 21, 2016

APPEARANCES:

    *James E. Melle* **for Appellant**

    *Derek W. DeVine* **for Appellee**

**SHAW, P.J.**

{¶1} Defendant-appellant, Brian P. Bolen, appeals the December 8, 2015 judgment entry of sentence issued by the Seneca County Common Pleas Court journalizing his convictions by no contest plea on one count of Possession of Marijuana and one count of Tampering with Evidence, and sentencing him to serve six years in prison on the Possession of Marijuana conviction and eighteen months in prison on the Tampering with Evidence conviction, to be served concurrently. On appeal, Bolen assigns as error the trial court overruling his combined "Motion to Suppress Evidence and for Order in Limine."

{¶2} On August 14, 2013, the Seneca County Grand Jury returned a two count indictment against Bolen alleging Count One, Possession of Marijuana, in violation of R.C. 2925.11(A),(C)(3)(f), a felony of the second degree, and Count Two of Tampering with Evidence, in violation of R.C. 2921.12(A)(1), a felony of the third degree. The charges arose from the execution of a search warrant, which resulted in the seizure of several items including, six bails of marijuana totaling 59.27 pounds, numerous live plants, and other drugs and drug-related items. The events leading up to the execution of the warrant involved two open burn incidents that occurred on a vacant lot next to Bolen's home. While Officer Brandon Bell of the Fostoria Police Department was investigating the second open burn incident, he smelled and observed marijuana plants growing behind Bolen's home. After

receiving no response from knocking at the front and back doors and hearing people move around inside, he attempted to make contact with the occupants by knocking on a ground level window near the property line with the vacant lot, through which he observed marijuana remnants and drug paraphernalia on a kitchen table inside the home. Officer Bell's observations of the live marijuana plants and the marijuana remnants and drug paraphernalia formed the basis for the issuance of the search warrant of Bolen's home.

{¶3} On March 19, 2015, Bolen appeared for arraignment and pleaded not guilty to the charges in the indictment.

{¶4} On October 13, 2015, Bolen filed a "Motion to Suppress Evidence and for Order in Limine." Bolen raised several issues alleging the search warrant to be defective, including that the warrant was not authorized to be executed at night, the supporting affidavit was not properly sworn to, and Officer Bell's continued viewing inside the residence through the window exceeded the scope of the initial reason for him being on the premises and therefore constituted an unlawful warrantless search. Bolen also argued that the "plain view" exception to the warrant requirement did not apply. The State filed a response to Bolen's arguments for suppression.

{¶5} On November 16, 2015, the trial court held a hearing on Bolen's "Motion to Suppress Evidence and for Order in Limine."

Case No. 13-16-01

*First Open Burn Incident*

{¶6} The prosecution presented the testimony of personnel from the Fostoria Fire Department to establish that on July 22, 2012, at 5:01 p.m., the fire department received a report of an "open burn complaint" on a vacant lot near Spruce Street in Fostoria. (Supp. Hrg. at 13). The three-feet-high fire consisted mainly of brush and limbs and was located approximately fifty feet from the closest structure. Scott Basinger, Shift Captain with Fostoria Fire Department, testified that he spoke to a man who admitted to starting the fire to "clean up the area a little bit" and advised him that it was illegal to burn debris in this manner. (*Id.* at 25). Capt. Basinger explained that it is not typical protocol for the fire department to take the names of people they encounter on an open burn complaint. Therefore, he did not know the name of the man and could not identify the man as Bolen in court.[1] However, Capt. Basinger observed the man enter a home adjacent to the burn site and identified the home located at 576 Spruce Street, which was later determined to belong to Bolen, from a photograph introduced at the hearing. The fire was cleared at approximately 5:18 p.m. and the fire department personnel returned to the station.

*Second Open Burn Incident*

{¶7} Later that night, at approximately 9:57 p.m., fire department personnel were called back to the same location on the vacant lot, this time by law

---

[1] For reasons not apparent from the record, the suppression hearing took place nearly three and half years after the incident.

enforcement, who had been dispatched there to investigate a second open burn complaint. The second fire was burning in the same place as the first, but was larger than before. Capt. Basinger again responded to the call and was greeted by Officer Brandon Bell of the Fostoria Police Department at the scene. Capt. Basinger relayed information to Officer Bell about the man they encountered at the prior incident, who admitted to starting the fire.

{¶8} Together, Capt. Basinger and Officer Bell went to the residence where Capt. Basinger had seen the man enter a few hours before, which was identified as the house located at 576 Spruce Street. According to Capt. Basinger, they first approached the rear door.[2] Capt. Basinger recalled motion sensor lights illuminating and lighting up the entire backyard of the residence, which provided a clear view of the items in backyard. He also noticed lights on in the interior of the home. When no one answered, they walked around to the front door, which also had no response. He then conversed with Officer Bell, who asked him if anyone from the fire department noticed the marijuana plants growing in the backyard. Capt. Basinger stated he did not notice the plants. After the attempts to make contact with the man at the rear and front doors, Capt. Basinger returned to assist with clearing the fire, which was completed by 10:38 p.m.

---

[2] Photographs depicting the burn site and Bolen's house introduced at the hearing reveal that the vacant lot was situated next to Bolen's home providing a clear and an unobstructed side view of Bolen's entire property from the lot.

{¶9} Officer Bell also provided testimony regarding the second open burn incident. He explained that law enforcement was dispatched to the location of the second fire and that they were aware of a prior fire set there hours before. Officer Bell knew that the vacant lot was separate from the 576 Spruce Street home.

{¶10} Officer Bell explained that when he arrived to the vacant lot to investigate the fire, he could smell the odor of raw marijuana emanating in the air.[3] He estimated the site of the fire being twenty-five to thirty feet from the nearest structure, which was the home at 576 Spruce Street. He could see into the backyard of the 576 Spruce Street property because of the light illuminated from the fire truck and other external sources. (Supp. Hrg. at 88). He observed marijuana plants growing behind the home. He also shined his flashlight into the backyard of the 576 Spruce Street property to confirm his observation of the marijuana plants. (*Id*. at 72). He testified that he did not need to be on the 576 Spruce Street property to observe the marijuana plants. (*Id*. at 73). He informed fire department personnel about seeing the marijuana plants while still on the vacant lot and asked if they had noticed the plants during the first open burn call, to which they indicated no. (*Id*. at 89-90). He explained at that point he was investigating both the open burn complaint and the marijuana plants he observed.

---

[3] Officer Bell testified to his six years of training, education, and experience in marijuana detection in the marijuana eradication unit. He also is a K-9 handler and uses raw marijuana for training purpose.

{¶11} Officer Bell attempted to make contact with the residents by knocking on the front and rear doors of the home. When he approached the rear door of the home, he again noticed the marijuana plants when the motion sensor lights illuminated. He recalled seeing lights on inside and hearing people move inside the home, but no one answered the knocks on the doors. Office Bell then approached a window on the side of the house facing the open vacant lot where the fire was located. He explained why he approached the window: "To try, attempt to make contact with someone based on the fact I knocked on the front, rear door. I could hear people inside. At that point, I didn't know if maybe they were in a room that they couldn't hear me, so I knocked on the window then." (Supp. Hrg. at 77).

{¶12} According to Officer Bell, the window stood approximately three feet from the ground. Standing three to four feet from the window, Officer Bell could see a kitchen table through the blinds, which were opened and titled at an angle. On the table, there appeared to be a paper plate with what looked like a "marijuana pipe" and "some kind of marijuana remnants on the plate." (Supp. Hrg. at 78). Officer Bell took a photograph of what he observed through the window for "preservation of evidence." (*Id*. at 96). He could not recall if he was on the curtilage of the property when he took the photograph because there was nothing to indicate the property line. He also photographed the marijuana plants in the backyard.

{¶13} Officer Bell requested a search warrant for the 576 Spruce Street property based upon (1) his smell and observation of the marijuana plants growing behind the home, and (2) his observation of the suspected marijuana and drug paraphernalia through the window of the home. He also relayed information to law enforcement that he knocked on the front and rear doors of the residence and no one answered. Detective Gabriel Wedge of the Fostoria Police Department prepared the search warrant and supporting affidavit based upon the information obtained by Officer Bell and presented them to the Tiffin-Fostoria Municipal Court Judge, who reviewed the documents and authorized the execution of the search warrant. During the execution of the search warrant, Officer Bell encountered Bolen in the home. He also found several personal effects belonging to Bolen in the home, as well as the six bails of marijuana totaling 59.27 pounds, numerous live plants, and other drugs and drug-related items.

{¶14} On November 30, 2015, the trial court overruled Bolen's "Motion to Suppress Evidence and for Order in Limine," finding that the odor of raw marijuana detected by Officer Bell and his subsequent observation of the marijuana plants in the backyard of Bolen's property were sufficient to constitute probable cause to support the issuance of the search warrant. The trial court also found that the "plain view" exception applied to the drugs and drug-related items observed through the window. Specifically, the trial court concluded:

**The odor of marijuana alone, when detected by a person competent to identify it, is enough to justify the issuance of a search warrant. Here, Officer Bell observed marijuana plants on the property at 576 Spruce Street, and also observed suspected marijuana and drug paraphernalia through the window of the residence while trying to make contact with the occupants. The viewing of the marijuana plants in the yard alone would be enough to justify the search warrant.**

**\* \* \***

**Defendant also argues that Officer's [sic] Bell's look inside the window and observation of alleged marijuana and drug paraphernalia does not fall within the "plain view" exception to the warrant requirement. Officer Bell, however, was lawfully on the property when he observed the marijuana plants on the property and other items through the widow of the home. He looked through the window in an attempt to contact the occupants of the home, which was within the scope of his authority.**

(Doc. No. 52 at 3-4.)

{¶15} The trial court further found no merit in Bolen's arguments regarding the alleged search warrant defects based upon an unauthorized nighttime search and an improper supporting affidavit.

{¶16} On December 7, 2015, Bolen withdrew his previously tendered not guilty pleas and entered pleas of no contest with consent to a finding of guilt to the charges stated in the indictment. As part of the plea agreement, Bolen agreed to surrender the house located at 576 Spruce Street. The trial court accepted Bolen's no contest pleas and found him guilty of the second degree felony Possession of Marijuana and the third degree felony Tampering with Evidence charges.

{¶17} The trial court sentenced Bolen to a mandatory six-year prison term for the Possession of Marijuana offense and an eighteen-month prison term for the Tampering with Evidence offense. The trial court ordered the prison terms to be served concurrently.

{¶18} Bolen filed this appeal, asserting the following assignments of error.

**ASSIGNMENT OF ERROR NO. I**

**THE TRIAL COURT ERRED IN DENYING DEFENDANT'S COMBINED MOTION IN LIMINE AND MOTION TO SUPPRESS.**

**ASSIGNMENT OF ERROR NO. II**

**THE TRIAL COURT ERRED IN FAILING TO FIND THAT OFFICER BELL UNLAWFULLY ENTERED THE CURTILAGE OF DEFENDANT'S RESIDENCE WITHOUT A WARRANT AND CONDUCTED A WARRANTLESS SEARCH OF THE INSIDE OF THE RESIDENCE BY LOOKING THROUGH A ONE INCH OPENING BETWEEN SLATS OF A KITCHEN WINDOW BLIND ON THE SIDE WINDOW AFTER 10 P.M.**

**ASSIGNMENT OF ERROR NO. III**

**THE TRIAL COURT ERRED IN FINDING AND CONCLUDING THAT THE ITEMS OBSERVED BY OFFICER BELL THROUGH THE KITCHEN WINDOW WERE IN PLAIN VIEW.**

**ASSIGNMENT OF ERROR NO. IV**

**THE TRIAL COURT ERRED IN FAILING TO FIND THE SEARCH WARRANT, OBTAINED AFTER A WARRANTLESS SEARCH, WAS TAINTED AND THE RESULTS OF THE SEARCH MUST BE SUPPRESSED AND THE SURRENDERED PROPERTY RETURNED.**

## ASSIGNMENT OF ERROR NO. V

**THE TRIAL COURT ERRED IN FAILING TO FIND THAT THE SEARCH OF THE SEIZED COMPUTERS WAS UNCONSTITUTIONAL BECAUSE IT WAS DERIVATIVE OF THE ITEMS SEIZED AS A RESULT OF THE TAINTED SEARCH WARRANT.**

## ASSIGNMENT OF ERROR NO. VI

**THE TRIAL COURT ERRED IN DENYING DEFENDANT HIS CONSTITUTIONAL RIGHTS UNDER THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE, 1, SECTION 14 OF THE OHIO CONSTITUTION.**

### *First, Second, Third, and Fourth Assignments of Error*

{¶19} Due to the interrelated nature of these assignments of error, we elect to address them together.

{¶20} In his first and second assignments for error, Bolen claims that the trial court erred in overruling his Combined Motion in Limine and Motion to Suppress. Specifically, Bolen argues that Officer Bell conducted an unconstitutional warrantless search of his home at 576 Spruce Street when Officer Bell looked through the window and observed the marijuana remnants and drug paraphernalia on the kitchen table inside. Bolen further claims in his third assignment of error that the trial court erred in determining that the plain view exception to the warrant requirement applied because Officer Bell was not permitted to be in the location where he viewed the evidence through the window. In his fourth assignment of error, Bolen contends that the search warrant subsequently obtained for his home

was tainted because the affiant officer included a description of Officer Bell's observation through the window as one of the grounds for probable cause in the supporting affidavit. For all these reasons, Bolen maintains that the evidence obtained during the execution of the search warrant should be suppressed as fruits of the poisonous tree and that the trial court erred in overruling his motion to suppress.

### *Standard of Review*

{¶21} Under Ohio law, "[a]ppellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8, citing *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). Accordingly, "an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19, 20 (1982). Further, "[a]ccepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706, 707, (4th Dist.1997).

*Officer Bell was Lawfully Positioned Outside the Window*

**{¶22}** On appeal, Bolen focuses almost exclusively on Officer Bell's conduct of looking into the side window of the home as the basis for contending an unconstitutional warrantless search occurred.[4] The primary tenant of Bolen's position on appeal is that Officer Bell was not permitted to be on the curtilage outside the ground floor window when he observed the marijuana remnants and drug paraphernalia on a kitchen table through the window. Thus, Bolen attempts to isolate this moment of time without giving due consideration to the facts and circumstances leading up to Officer Bell's decision to knock on the window, which are also necessary to review in determining whether Officer Bell's conduct was reasonable under the Fourth Amendment.

**{¶23}** It is undisputed that Officer Bell was dispatched to investigate the second open burn incident on the vacant lot adjacent to the 576 Spruce Street property. There, he was told by the firefighters attending to the fire that a man living at the home situated on the 576 Spruce Street property admitted to starting the first open burn hours earlier. While standing on the vacant lot at the site of the fire, Officer Bell also detected the odor of raw marijuana and observed marijuana plants growing in the backyard of the home situated on the 576 Spruce Street property.

---

[4] Bolen argues that two unlawful searches "were made from a position where [Officer Bell] was not lawfully authorized to be:" (1) when Officer Bell looked through the window and observed the marijuana remnants and drug paraphernalia, and (2) when Officer Bell took a photograph of the items to preserve evidence. (Appt. Brief at 12).

{¶24} At the suppression hearing, Officer Bell testified to his experience and expertise in detecting and identifying the odor of raw marijuana. *See* note 3, *supra*. As noted by the trial court in its judgment entry overruling Bolen's motion to suppress, the Supreme Court of Ohio has found that "[t]he smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to conduct a search." *State v. Moore*, 90 Ohio St.3d 47 (2000), paragraph one of the syllabus. "*Moore* makes no clear distinction between the smell of burnt marihuana and the smell of fresh marihuana." *State v. Navarro*, 3d Dist. Seneca No. 13-15-28, 2016-Ohio-749, ¶ 26. Thus, based upon the odor of raw marijuana and the observation of the marijuana plants behind the home, Officer Bell garnered the requisite probable cause to obtain a search warrant before ever stepping foot upon the 576 Spruce Street property.

{¶25} Notwithstanding this fact, Officer Bell specifically testified that he walked onto the 576 Spruce Street property with Capt. Basinger to investigate *both* the open burn incident *and* the marijuana plants by speaking to the occupants inside the home. The record is unclear as to whether Officer Bell and Capt. Basinger approached the rear or front door of the home first. Bolen appears to take issue with the fact that Officer Bell may have initially approached the rear door, by entering the curtilage of the home from the adjacent vacant lot to do so, rather than first

approaching the front door.[5] The curtilage is the area around a home that a resident may reasonably expect to enjoy the sanctity and privacy of the home and is protected from unreasonable searches and seizure under the Fourth Amendment. *Oliver v. United States*, 466 U.S. 170, 180, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984).

**{¶26}** However, "[a] law enforcement officer may enter a home's curtilage without a warrant if he has a legitimate law-enforcement objective, and the intrusion is limited." *Turk v. Comerford*, 488 Fed.Appx. 933, 947 (6th Cir.2012), citing *United States v. Weston*, 443 F.3d 661, 667 (8th Cir.2006). "One such permissible warrantless intrusion is the investigative technique known as 'knock and talk,' where a police officer knocks on the front door of a home for purposes of speaking to the occupants or asking for consent to search the premises." *Pritchard v. Hamilton Twp. Bd. of Trustees*, 424 Fed.Appx. 492, 499 (6th Cir.2011). "An officer may initiate a knock and talk without any objective level of suspicion." *Pritchard* at 499; *State v. Miller*, 2d Dist. Montgomery No. 24609, 2012-Ohio-5206, ¶ 16.

**{¶27}** To this end, Officer Bell's entrance upon the curtilage of the home to conduct a "knock and talk" with the person who had previously admitted to the firefighters that he started the first fire and/or to the occupants who may have knowledge regarding the marijuana plants were clearly legitimate law-enforcement

---

[5] We note that the photographs depicting the home situated on 576 Spruce Street and the adjacent vacant lot show that there were no fences or landscaping demarking the property line between the two parcels, and there was an unobstructed view of the entire property from the vacant lot.

objectives and provided limited intrusion on the occupant's expectation of privacy. Notably, in approaching the back door to conduct a "knock and talk," Officer Bell was able to more closely observe the live marijuana plants growing in the back yard of the 576 Spruce Street property, confirming his initial determination from the vacant lot.

{¶28} In attempting to make contact with the occupants of the home, Officer Bell knocked multiple times on both the front and back doors. It was at this time that Officer Bell observed interior lights illuminated and heard moving people inside the home. Officer Bell testified that the lack of response to his knocking on the doors and the indication of someone inside the home prompted him to approach the ground level window located at the side of the home near the vacant lot.[6] He explained his specific intention in approaching the window was "[a]t that point, I didn't know if maybe [the occupants] were in a room that they couldn't hear me, so I knocked on the window then." (Supp. Hrg. at 77). The record demonstrates that it was while Officer Bell was attempting to make contact with the occupants at the window that he observed the remnants of marijuana and drug paraphernalia on a nearby kitchen table, which, in addition to the live marijuana plants, formed one of

---

[6] Officer Bell testified that he was standing three to four feet from the window when he knocked. He also indicated that since the incident occurred at night, visibility was limited and there no light source to indicate the property line between the 576 Spruce Street property and the vacant lot.

the two independent bases of probable cause for obtaining the search warrant of the home.

{¶29} Bolen contends that Officer Bell was not permitted to be on the curtilage outside the ground level window. However, "where knocking at the front door is unsuccessful in spite of indications that someone is in or around the house, an officer may take reasonable steps to speak with the person being sought out even where such steps require an intrusion into the curtilage." *Hardesty v. Hamburg*, Twp., 461 F.3d 646, 654 (6th Cir.2006). Under the circumstances outlined above and considering each step taken by Officer Bell in the investigation of the second open burn incident and the live marijuana plants, including conducting a "knock and talk," we do not find it was unreasonable for Officer Bell to approach the ground level window near the burn site to make contact with the occupants whom he suspected to be inside the home nor did such conduct constitute an impermissible intrusion upon the occupants' privacy in violation of the Fourth Amendment.

{¶30} Accordingly, we do not find error in the trial court's determination that Officer Bell "was lawfully on the property when he observed the marijuana plants on the property and other items through the window of the home. He looked through the window in an attempt to contact the occupants of the home, which was within the scope of his authority." (Doc. No. 52 at 3-4.)

*The Plain View Doctrine Applies*

**{¶31}** This leads us to address Bolen's third assignment of error under which he argues the trial court erred in concluding that the plain view doctrine applied to the facts of this case—specifically, that the marijuana remnants and drug paraphernalia were in Officer Bell's plan view when he knocked on the window to make contact with the occupants. Pursuant to the plain view doctrine, the warrantless search or seizure by a law enforcement officer of an object in plain view does not violate the Fourth Amendment if (1) the officer did not violate the Fourth Amendment in arriving at the place where the object could be plainly viewed, (2) the officer has a lawful right of access to the object, and (3) the incriminating character of the object is immediately apparent. *State v. Robinson*, 103 Ohio App.3d 490, 494 (1st Dist.1995), citing *Horton v. California*, 496 U.S. 128, 136–137, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990).

**{¶32}** Bolen's primary objection to the trial court's application of the plain view doctrine to this case is his contention that Officer Bell was not lawfully positioned on the curtilage outside the window when he observed the marijuana remnants and drug paraphernalia. However, light of our previous discussion on this point, we similarly find no error in the trial court's determination that the plain view doctrine applied to the facts of this case.

*The Search Warrant is Valid*

**{¶33}** In his fourth assignment of error, Bolen argues that the search warrant was invalid. The search warrant executed in this case had two primary grounds for establishing probable cause (1) the marijuana plants Officer Bell observed growing in the area behind the home and (2) the marijuana remnants and drug paraphernalia Officer Bell viewed through the window while attempting to make contact with the occupants. Bolen does not dispute that Officer Bell's observation and olfactory detection from the vacant lot of the marijuana plants growing in the backyard constituted probable cause to obtain a search warrant. Instead, he claims that Officer Bell's conduct of looking through the ground level window amounted to an unlawful search and tainted the entire search warrant requiring the results of the search to be suppressed.

**{¶34}** Notwithstanding our determination that no illegal search occurred in this matter, even assuming *arguendo* that Officer Bell had not been properly positioned outside the window while conducting a legitimate law-enforcement objective, we are not persuaded by Bolen's arguments that including a description of Officer Bell's observations through the window in the supporting affidavit invalidated the search warrant. Bolen relies heavily on a prior case decided by this Court, *State v. Foster*, in support of his contention that the warrant should be invalidated as "fruits of the poisonous tree." See *Foster*, 3d Dist. Allen No. 1-14-

54, 2015-Ohio-3401. However, a review of *Foster* reveals the facts in that case are readily distinguishable.

**{¶35}** There, law enforcement conducted a warrantless search of a home under the pretense of completing a search for intruders after receiving call from the alarm company indicating that a home alarm had been sounded. *Foster* at ¶ 2. The officers observed the front door cracked open upon responding. *Id.* When inside the home, the officers pulled bags off a shelf and found large amounts of money and crack cocaine. *Id.* at ¶ 3. At a subsequent hearing, the officers admitted that under the circumstances they should have obtained a search warrant prior to opening the bags and acknowledged that the bags could not be hiding an intruder, but they nevertheless elected to proceed with the warrantless search. *Id.* at ¶ 10. After no intruders were found in the home, the officers called for a search warrant of the home, citing the money and the crack cocaine as the basis for probable cause. *Id.* at ¶ 3. Foster appealed the trial court's overruling of his motion to suppress in that case.

**{¶36}** This Court determined on appeal that the money and crack cocaine should have been suppressed by the trial court because they were the result of an illegal warrantless search. *Id.* at ¶ 15. We also determined that "[b]ecause the 'fruits' of the illegal search were included as a basis for the warrant, the warrant

itself was tainted and we have no way of knowing whether a warrant would have been issued in this case absent the statement that they had found cocaine." *Id*.

**{¶37}** In the instant case, there were two separate and distinct grounds establishing probable cause in the affidavit accompanying the search warrant of the home. In its judgment entry overruling Bolen's motion to suppress, the trial court specifically found that Officer Bell's observation and smell of the marijuana plants alone constituted probable cause to "justify the issuance of a search warrant." (Doc. No. 52 at 3). Moreover, Officer Bell's detection and confirmation of the marijuana plants growing in the backyard of the property occurred prior to and was independent from his observation of the marijuana remnants and drug paraphernalia through the window. Thus, there was no causal connection between the two bases for probable cause. Consequently, we find no error in the trial court's conclusion that even without the description of the evidence viewed as a result of Officer Bell looking through the window, the detection of the marijuana plants alone justified the issuance of the search warrant.

**{¶38}** We further note that "[t]he exclusionary rule bars the use of evidence secured by an unconstitutional search and seizure." *State v. Johnson*, 141 Ohio St.3d 136, 2014-Ohio-5021, ¶ 40, citing *Weeks v. United States*, 232 U.S. 383, 394, 34 S.Ct. 341, 58 L.Ed. 652 (1914) (announcing the exclusionary rule), and *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) (extending the

exclusionary rule to the states). Application of the exclusionary rule to evidence found as a result of an unconstitutional search and seizure is not a personal constitutional right to be exercised by the defendant. *Id.*, citing *Davis v. United States*, 564 U.S. 229, 131 S.Ct. 2419, 2426, 180 L.Ed.2d 285 (2011). "[T]he exclusionary rule's 'sole purpose * * * is to deter future violations of the Fourth Amendment[,] and [w]here suppression fails to yield "appreciable deterrence," exclusion is "clearly * * * unwarranted." ' " *Id.*, quoting *Davis* at 2426-27, quoting *United States v. Janis*, 428 U.S. 433, 454, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976).

{¶39} Unlike in *Foster* where the law enforcement officers admitted that they should have obtained a warrant before they searched the contents of the bags inside the home, in this case, the record indicates that Officer Bell reasonably and accurately believed he was acting within in the scope of his authority to conduct a "knock and talk" with the occupants of the home when he approached the window and viewed the marijuana remnants and the drug paraphernalia. More importantly, the police conduct in actually searching and seizing the items in this case was based upon approval of these circumstances by the municipal judge in a search warrant affirming that these observations constituted probable cause and were therefore executed lawfully in good faith.

{¶40} The exclusionary rule generally applies where police exhibit " 'deliberate,' 'reckless,' or 'grossly negligent' disregard for Fourth Amendment

rights, * * * " but not "when the police act with an objectively 'reasonable good-faith belief' that their conduct is lawful." *Davis v. United States*, supra, 131 S.Ct. at 2427. If the police "conduct involves only simple, 'isolated' negligence, the deterrence rationale loses much of its force, and exclusion cannot 'pay its way.' " *Id*. at 2427–2428, citing *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). "[A]n assessment of the flagrancy of the police misconduct constitutes an important step in the calculus." *Leon* at 911, 104 S.Ct. 3405. Accordingly, we find no merit in Bolen's arguments that the inclusion of Officer Bell's observation through the ground floor window as one basis for establishing probable cause somehow rendered the search warrant invalid.[7]

**{¶41}** Based on the foregoing discussion, we conclude that the trial court did not err in overruling Bolen's motion to suppress. Bolen's first, second, third, and fourth assignments of error are overruled.

---

[7] Bolen cites a handful of cases in support of his argument that all the evidence seized as a result of the execution of the search warrant must be suppressed. *See e.g., State v. Vondenhuevel*, 3d Dist. Logan No. 8-04-15, 2004-Ohio-5348; *State v. Morgan*, 5th Dist. Fairfield No. 13-CA-30, 2014-Ohio-1900; *State v. Peterson*, 2d Dist. Montgomery No. 22008, 173 Ohio App.3d 575, 2007-Ohio-5667. In citing these cases, Bolen appears to be advocating for a bright line rule stating that an officer can never be lawfully positioned on or near the curtilage of the home regardless of the particular facts and circumstances of the case and the reasonableness of the officer's conduct in effectuating a legitimate law-enforcement objective. To the contrary, each of these cases highlights the importance of a case-by-case analysis rather than a sweeping rule on this issue. Moreover, none of the cases cited by Bolen involve the same set of facts as in this case and we find these cases to be inapposite to the one currently before us.

*Fifth Assignment of Error*

**{¶42}** In his fifth assignment of error, Bolen argues that the trial court erred in failing to suppress the results from the search of his three computers. The record reflects that a second warrant was issued for the contents of the computer after the seizure of the computers pursuant to the execution of the first search warrant. Bolen first argues the second warrant issued for the computer contents was invalid based on his presumption that the first warrant for the seizure of the computers was tainted by an illegal search. However, since we have already dispensed with that argument and found the first search warrant valid, we do not find merit in Bolen's argument in this respect.

**{¶43}** Bolen alternatively argues that the first search warrant was flawed because the supporting affidavit was so expansive that it failed to meet the particularity requirement under the Fourth Amendment to properly seize the computers. Incidentally, Bolen failed to raise this particular argument regarding the computers in his "Motion to Suppress Evidence and for Order in Limine" and now contends the issue was preserved under a generalized statement in the motion to suppress that "all of the evidence gathered in this case" should be suppressed. Arguably, Bolen's claim on appeal with respect to the computers is waived.

**{¶44}** Nevertheless, Bolen cites *State v. Castagnola* in support of this contention that the warrant description of what was to be seized was overly broad.

145 Ohio St.3d 1, 2015-Ohio-1565. However, a review of that case reveals it to be fact specific and distinguishable from the present case. *See also State v. Knoefel*, 11th Dist. Lake No. No. 2014-L-088, 2015-Ohio-5207, ¶¶ 129-30 (noting the limited application of *Castagnola*). Moreover, the record demonstrates that the contents of the computer revealed its user was Bolen and it had "various searches on it indicating marijuana-related questions and K2 or spice type of questions related to that." (Plea and Sent. Hrg. at 19). It is unclear how suppression of the computer's contents would affect the outcome of Bolen's case on appeal when he plead no contest to a second degree felony possession offense based upon the amount of marijuana found in the home. Accordingly, we do not find that the trial court erred in failing to suppress the results from the search of Bolen's three computers and we overrule Bolen's fifth assignment of error.

*Sixth Assignment of Error*

{¶45} In his sixth assignment of error, Bolen claims his plea agreement is a "nullity" based upon his allegation that his Fourth Amendment rights were violated. Having already considered and rejected Bolen's arguments with respect to Officer Bell's conduct of knocking on the ground floor window, we do not find merit in his claim that the plea agreement is a "nullity." Bolen also argues that the forfeiture of the 576 Spruce Street property, the transfer of which only appears in the record as part of the plea agreement, was improper because it was not charged in the

indictment as required by R.C. 2941.1417 and a civil forfeiture action was not commenced within 60 days as provided by R.C. 2981.03(F) and R.C. 2981.05. Notably, the State did not address this argument raised by Bolen in its brief.

{¶46} Pursuant to R.C. 2981.03, a prosecutor may seek forfeiture of a seized property by either including a forfeiture specification in the charging instrument, R.C. 2981.04, or by filing a civil action, R.C. 2981.05, or both. *State v. Hagan*, 11th Dist. Ashtabula No.2014-A-0013, 2014-Ohio-4308, ¶ 13. The record in this case contains no indication that the prosecution pursued a civil forfeiture complaint pursuant to R.C. 2981.05, therefore, the issue raised by Bolen can only pertain to criminal forfeiture.

{¶47} It is well recognized that forfeitures are not favored and, whenever possible, forfeiture statutes must be construed so as to avoid a forfeiture of property. *State v. West*, 8th Dist. Cuyahoga Nos. 97391 and 97900, 2013-Ohio-96, ¶ 31, citing *State v. Lilliock*, 70 Ohio St.2d 23, 25–26 (1982). With regard to criminal forfeiture, R.C. 2981.04(A)(1) describes the manner in which criminal forfeiture proceedings are to be initiated.

> **Property described in division (A) of section 2981.02 of the Revised Code may be forfeited under this section *only if the complaint, indictment, or information charging the offense* or municipal violation, or the complaint charging the delinquent act, contains a specification of the type described in section 2941.1417 of the Revised Code that sets forth all of the following to the extent it is reasonably known at the time of the filing:**

    **(a)** **The nature and extent of the alleged offender's or delinquent child's interest in the property;**

    **(b)** **A description of the property;**

    **(c)** **If the property is alleged to be an instrumentality, the alleged use or intended use of the property in the commission or facilitation of the offense.**

**{¶48}** R.C. 2981.04(A)(1)(emphasis added).

**{¶49}** Section 2941.1417(A) of the Revised Code sets forth the language to be included in a forfeiture specification contained in the charging instrument and states:

*Property is not subject to forfeiture in a criminal case unless the indictment, count in the indictment, or information charging the offense specifies*, **to the extent it is reasonably known at the time of filing, the nature and extent of the alleged offender's interest in the property, a description of the property, and, if the property is alleged to be an instrumentality, the alleged use or intended use of the property in the commission or facilitation of the offense. The specification shall be stated at the end of the body of the indictment, count, or information and shall be in substantially the following form:**

**"SPECIFICATION (or SPECIFICATION TO THE FIRST COUNT). The grand jurors (or insert the person's or prosecuting attorney's name when appropriate) further find and specify that (set forth the alleged offender's interest in the property, a description of the property subject to forfeiture, and any alleged use or intended use of the property in the commission or facilitation of the offense)."**

**{¶50}** R.C. 2941.1417(A)(emphasis added).

{¶51} Thus, the plain and unambiguous language of R.C. 2981.04(A)(1) and R.C. 2941.1417(A) requires the State to include a forfeiture specification in the charging document if the State intends to pursue criminal forfeiture of the defendant's property.[8] These statutes are designed to apprise the defendant of the State's reasons supporting its allegation that the property in question is subject to criminal forfeiture. *See State v. Little*, 12th Dist. Butler No. CA2014-01-020, 2014-Ohio-4756, ¶ 34, fn. 4 ("Notice * * * is a procedural requirement contained in both R.C. 2981.04(A)(1) and (2) that must be given to the alleged offender in order to establish the trial court's authority to order forfeiture.").

{¶52} Here, the record demonstrates that the State failed to include a forfeiture specification in the indictment as required by R.C. 2981.04(A)(1). The statute clearly indicates the legislative intent that property that is reasonably foreseen to be subject to forfeiture may be forfeited "*only if*" the charging document contains the necessary forfeiture specification under R.C. 2941.1417. Moreover,

---

[8] We note that R.C. 2981.04(A)(2) provides an alternative method for the State to comply with the statutory notice requirement if (1) the property subject to forfeiture is not reasonably foreseen to be subject to forfeiture at the time of filing the charging instrument, and (2) the prosecutor, upon discovering the property to be subject to forfeiture, gave prompt notice to the offender under the applicable criminal rule. "In all other instances, i.e., where the property is reasonably foreseen to be subject to forfeiture, the state must comply with provisions found in R.C. 2981.04(A)(1)." *State v. Little*, 12th Dist. Butler No. CA2014-01-020, 2014-Ohio-4756, ¶ 31. Here, there is nothing in the record to suggest that the property at 576 Spruce Street was not reasonably foreseen by the State to be subject to forfeiture at the time of filing the charging instrument given the fact that the offenses included in the indictment were based upon conduct that occurred while utilizing the premises. Nevertheless, the record further indicates that the State did not comply with the notice requirements of R.C. 2981.04(A)(2) because it also failed to include notice of its allegation that the property was subject to forfeiture in the bill of particulars as required by the statute. See R.C. 2981.04(A)(2) citing Crim.R. 7(E).

while the plea agreement in this case mentioned the address of the property at issue, the record is devoid of any evidence that the State apprised Bolen of the nature and extent of his interest in the property or the alleged use or intended use of the property in the commission or facilitation of the offenses. Simply put, there is nothing in the record to demonstrate that the State attempted to comply with any of the statutory forfeiture requirements.

**{¶53}** In fact, the only mention of the 576 Spruce Street property in this case is found in the "sentencing recommendation" portion of the written plea agreement, which appears in the record as follows:

> **If the Defendant enters a plea of No Contest with a Consent to a Finding of Guilty to the charges as stated in the indictment, the Parties will jointly recommend to the Court that the Defendant be sentenced for Count One to a mandatory prison term of six (6) years to be served concurrently with the sentence Defendant is serving out of Wyandot County and, for Count Two, a stated prison term of eighteen (18) months, to be served concurrently with Count One for a total stated prison term of six (6) years mandatory.** *The Defendant further agrees to surrender the house located at 576 Spruce Street, Fostoria, Seneca County, Ohio.* **The parties will further recommend the Defendant pay court costs. The parties otherwise reserve the right to speak at sentencing.**

(Doc. No. 57 at 3)(emphasis added).

**{¶54}** The trial court held the change of plea and sentencing hearings simultaneously. After conducting the Crim. R. 11 colloquy with Bolen, Bolen changing his plea and signing the written plea agreement, and the trial court accepting Bolen's plea, the trial court proceeded to sentencing. Defense Counsel

-29-

requested that the trial court implement the agreed-upon sentencing recommendation set forth in the negotiated plea agreement. Defense Counsel also informed the trial court of the following transaction.

> **Defense Counsel: I would further indicate for the record that I have been given an executed warranty deed for the property at 576 Spruce Street and that property has been successfully surrendered to the City of Fostoria. So I, I have that in my possession.**

(Dec. 7, 2015 Hrg. at 21).

{¶55} The trial court proceeded to pronounce the sentence at which point the following exchange transpired.

> **Trial Court: I'm ordering that you forfeit the real estate at 576 Spruce Street, Fostoria, Seneca County, Ohio. And order that you pay court costs in this case.**
>
> **\* \* \***
>
> **Defense Counsel: Your Honor, may I interrupt you?**
>
> **Trial Court: You may.**
>
> **Defense Counsel: Are you sure that you want to put an order on to forfeit since Mr. Bolen's already transferred? I'm just thinking about all that language from the last couple Court of Appeals cases on what's required to go through the forfeiture.**
>
> **Prosecutor: We really didn't consider this a forfeiture, Your Honor. We consider this a surrender.**
>
> **Trial Court: I will take it out.**
>
> **Prosecutor: And that's why we included it in our—**

> **Trial Court: Thank you, [Defense Counsel]. I will take it out. It is not—will not be in the sentencing order and I vacate that portion of what I discussed on forfeiture. All right.**
>
> **Defense Counsel: Thank you, Your Honor.**

(*Id*. at 27-28).

**{¶56}** In accordance with the foregoing discussion between counsel and the trial court, there is nothing in the trial court's judgment entry of sentence mentioning the 576 Spruce Street property as "surrendered," "forfeited," or otherwise transferred in conjunction with the disposition of this criminal case.

**{¶57}** In sum, because the State did not invoke the criminal forfeiture procedure by including a specification in the indictment or subsequently providing statutory notice in a bill of information[9] and because the trial court did not include an order effectuating the transfer of possession of Bolen's property in connection with this case, we find there is no order compelling the transfer of the property in the case before us. Accordingly, we find Bolen's arguments and assignment of error as they pertain to an improper forfeiture are moot as there is no order of forfeiture issued by the trial court regarding the 576 Spruce Street property for us to review.

---

[9] Notably, some appellate courts have held that when the State failed to properly initiate criminal forfeiture proceedings pursuant to R.C. 2981.04(A), the trial court does not have the authority to order forfeiture of the property as part of its sentence. *See State v. Little*, 12th Dist. Butler No. CA2014-01-020, 2014-Ohio-4756, ¶ 34, fn. 4 (finding the initiation of criminal forfeiture proceedings pursuant to the statute as constituting a matter of subject-matter jurisdiction that cannot be waived). *See, e.g., State v. Christian*, 2d Dist. Montgomery No. 25256, 2014–Ohio–2672, ¶ 136 (finding unpersuasive the State's argument that appellant waived the notice requirement by failing to object to the forfeiture in the trial court); *see also State v. Mbodji*, 129 Ohio St.3d 325, 2011–Ohio–2880, ¶ 10 (objections to subject-matter jurisdiction cannot be waived).

Case No. 13-16-01

**{¶58}** For all these reasons, the assignments of error are overruled and the judgment is affirmed.

*Judgment Affirmed*

**PRESTON, J., concurs.**

**ROGERS, J.**, **concurring separately.**

**{¶59}** I concur with the opinion of the majority including the result reached on the issue of forfeiture, since there is no order to review. I write separately only to express my concern that the tactic of *surrender* of property, as opposed to forfeiture, raises concerns we cannot answer in this opinion.

**{¶60}** Ohio law does not favor forfeiture. *State ex rel. Pizza v. Rezcallah*, 84 Ohio St. 3d 116, 131 (1998). Thus, forfeiture is only proper if the correct steps are taken.

> The language of R.C. 2941.1417 could not be more clear and unequivocal. '*Property is not subject to forfeiture in a criminal case*' unless the required information is contained in the specification. R.C. 2981.04(A)(1) is equally clear**.**

(Emphasis added) *State v. Schmidt*, 3d Dist. Seneca No. 13-13-07, 2014-Ohio-758, ¶ 20 (Rogers, J., dissenting), quoting R.C. 2941.1417.

> Further, R.C. 2981.04(A)(1) provides, in part,

> Property described in division (A) of section 2981.02 of the Revised Code *may be forfeited under this section only if the complaint, indictment, or information charging the offense* or municipal

-32-

> violation, or the complaint charging the delinquent act, contains a specification of the type described in section 2941.1417 of the Revised Code that sets forth all of the following to the extent it is reasonably known at the time of the filing: * * *

(Emphasis added.)

{¶61} Because the surrender takes place in the context of a criminal prosecution, I think the terminology is mere semantics. The State appears to be coercing a prohibited forfeiture without due process, which raises issues of ethics and professionalism for both the prosecution and defense counsel.

/jlr