The STATE of Ohio, Appellee,

v.

KEITH, Appellant.

[Cite as *State v. Keith,* 178 Ohio App.3d 46, 2008-Ohio-4326.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 22354.

Decided Aug. 22, 2008.

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Carley J. Ingram, Assistant Prosecuting Attorney, for appellee.

Miguel A. Santiago, for appellant.

Brogan, Judge.

{¶ 1} Appellant, Dewayne Keith, appeals from his conviction of one count of possession of crack cocaine in the amount greater than one but less than five grams, pursuant to his no-contest plea.

{¶ 2} Prior to his plea, Keith moved to suppress the drugs recovered by the police that formed the basis of his charge. According to the evidence presented at the suppression hearing, on November 18, 2006, Dayton Police Officer Ronald Velez responded to a disturbance call from the Dayton Motor Motel, located on North Keowee Street. Ms. Kailis Patel, who owns and manages the motel with her brother, Mr. Praful Patel, reported that a white female wearing a red sweater was knocking on motel room doors, disturbing other customers. The woman in the red sweater was later identified as Krystal Phillips. When Officer Velez arrived at the motel, Mr. Patel informed the officer that Phillips was in room 38 and accompanied him to the room.

{¶ 3} Officer Velez testified that while Mr. Patel knocked on the door of room 38, he stood next to Patel on the opposite side of the door. Officer Velez testified that he thought Mr. Patel had called out, "Front desk," but he was not sure, because he had some difficulty understanding Mr. Patel's accented English. After about three minutes, Keith opened his door, and Officer Velez questioned Keith, who identified himself as Dewayne. Mr. Patel looked into the room, pointed to the woman in the red sweater, and stepped into Keith's room. Concerned about protecting Mr. Patel from the occupants, considering the motel's location in a high crime area, Officer Velez followed Mr. Patel into the room without asking for permission and walked to the right of Mr. Patel, who had entered to the left side of the room. Officer Velez testified that as soon as he entered the room, he observed drugs in plain view on top of the dresser that stood directly four feet across from the doorway. In response to Officer Velez's queries, neither Keith nor Phillips claimed ownership of the drugs, but Keith admitted that he had rented the room. Officer Velez arrested Keith for permitting drug use.

{¶ 4} Contrary to Officer Velez's testimony, Mr. Patel testified that he was not the one who knocked on the door, but that it was Officer Velez who knocked on the door and entered the room alone without permission. While Mr. Patel was standing at the door, he noticed Phillips and informed the officer that Phillips was the woman creating the disturbance. After the officer asked her to identify herself, Patel returned to the front desk.

{¶ 5} Keith was indicted on January 17, 2007, and filed a motion to suppress, which the court overruled. The trial court held: "[T]he drugs were on a dresser directly in front of this opened door, * * * and the officer saw the drugs on entering the room. But had he not entered the room, * * * by a preponderance

of the evidence, * * * there is reasonable probability he would have seen those drugs during the course of the ongoing discussions he would have had with the occupants."

{¶ 6} The drugs were seen lying on a dresser directly in front of the motel door some four feet away. Keith pleaded no contest to the charge and was sentenced to 14 months in prison. Keith appeals his conviction, asserting in his single assignment of error that the trial court erred by denying the motion to suppress the evidence seized in the warrantless search of his motel room when there was no consent given and when no exigent circumstances existed.

{¶ 7} The Fourth Amendment protects individuals from an unreasonable search in their homes. See *Katz v. United States* (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576; *State v. White* (2008), 175 Ohio App.3d 302, 2008-Ohio-657, 886 N.E.2d 904. The sanctity of the home extends to any area where one has a legitimate and reasonable expectation of privacy, including a motel room. *State v. Norris* (Nov. 5, 1999), Montgomery App. No. 17689, 1999 WL 1000034 at *2–3. Police may not enter one's home to perform a search or to seize items without a warrant, absent consent or exigent circumstances. *Payton v. New York* (1980), 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639. The United States Supreme Court has held that an exigent circumstance is (1) an emergency situation that arises when a person in the home is in need of "immediate aid" or there is a life-threatening situation, or (2) a "hot pursuit." *Mincey v. Arizona* (1978), 437 U.S. 385, 392–393, 98 S.Ct. 2408, 57 L.Ed.2d 290; *State v. Bowe* (1988), 52 Ohio App.3d 112, 113, 557 N.E.2d 139. "The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal." Id. at 392, 98 S.Ct. 2408, 57 L.Ed.2d 290. An important factor in determining whether exigent circumstances exists is the gravity of the underlying offense. *Welsh v. Wisconsin* (1984), 466 U.S. 740, 753, 104 S.Ct. 2091, 80 L.Ed.2d 732.

{¶ 8} In his testimony, Officer Velez offered a justification for his warrantless entry into Keith's rooms. Officer Velez asserted that the reason he followed Mr. Patel into the room was a result of his concern for the safety of Mr. Patel since the Dayton Motor Motel is known for drug sales and prostitution and that he had previously made "plenty" of arrests in the area. The record, however, indicates that Ms. Patel had called the police only to evict Phillips, who was disturbing other customers by knocking on their doors. Knowing that Phillips was in room 38, the officer could have asked Phillips to exit the room and then waited outside until she came out. There is nothing in the record that indicates that Phillips would have refused to exit the room. Moreover, there was no one in immediate need of aid, and the entry was not made as a result of hot pursuit of the suspect. Accordingly, the exigent-circumstances exception does not apply to the present set of circumstances.

{¶ 9} A warrantless entry into one's home is justified if the person whose property is being searched voluntarily gives consent to the entry. *State v. Asworth* (Apr. 11, 1991), Franklin App. No. 90AP–916, 1991 WL 54181 at *4, citing *Illinois v. Rodriguez* (1990), 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148. In examining the record we find no indication of Keith's consent to permit the police officer to enter his motel room. Officer Velez testified that it was Mr. Patel who knocked on the door, and the officer did not say anything after Mr. Patel knocked. Even though Keith voluntarily opened his room door, he only did so in response to Mr. Patel's advising that it was the "front desk" at the door, not the police.

{¶ 10} The state contends that the discovery of the drugs was inevitable after Keith opened the door. Under the inevitable-discovery exception to the warrant requirement, evidence will not be suppressed if there is a reasonable probability that illegally obtained evidence would have ultimately been discovered during a lawful investigation, notwithstanding the government's misconduct. *State v. Sharpe,* 174 Ohio App.3d 498, 2008-Ohio-267, 882 N.E.2d 960, ¶ 59, citing *Nix v. Williams* (1984), 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377. The state has the burden to show within a reasonable probability that police would have discovered the evidence independent from the unlawful conduct. Id. The state must show (1) "that the police possessed the leads making the discovery inevitable at the time of the misconduct and (2) that the police were actively pursuing an alternate line of investigation prior to the misconduct." *State v. Taylor* (2000), 138 Ohio App.3d 139, 151, 740 N.E.2d 704.

{¶ 11} One of the purposes of the exclusionary rule is to deter shortcuts of the search warrant requirement of the Fourth Amendment. 6 LaFave, Search and Seizure (2004) 270–271, Section 11.4(a). Accordingly, the inevitable-discovery doctrine is not applicable to those situations where its use would operate to nullify important Fourth Amendment safeguards. Id. at 271–272.

{¶ 12} In *United States v. Griffin* (1974), 502 F.2d 959, federal agents entered Griffin's house promptly on their arrival and seized a considerable amount of drugs discovered in plain view while another agent was dispatched to procure a search warrant. The other agent arrived with the warrant about four hours later. Id. at 960. The government relied on the inevitable-discovery rule to argue that it was inevitable that the drugs would have been discovered without the illegal entry. Id. The Sixth Circuit, however, rejected that argument and held the inevitable-discovery rule inapplicable. Id. at 961. "Absent any of the narrowly limited exceptions * * * to the search warrant requirement, police who believe they have probable cause to search cannot enter a home without a warrant merely because they plan subsequently to get one. The assertion by

police (after an illegal entry and after finding evidence of crime) that the discovery was 'inevitable' because they planned to get a search warrant and had sent an officer on such a mission, would as a practical matter be beyond judicial review. Any other view would tend in actual practice to emasculate the search warrant requirement of the Fourth Amendment." Id.

{¶ 13} Similarly, this court held the inevitable-discovery rule not applicable in *State v. Sharpe*, 174 Ohio App.3d 498, 2008-Ohio-267, 882 N.E.2d 960, because the subsequently obtained search warrant was based on facts discovered when the officers unlawfully entered Sharpe's home without a warrant and searched his home. The court found that the police were not actively pursuing any alternative line of investigation when they entered the defendant's room and discovered drugs. Id. at ¶ 63. Moreover, the fact that they had probable cause for a warrant did not permit the officers to enter without a warrant. Id. at ¶ 64. An illegal search conducted without a warrant is still illegal, even if there is probable cause. Id., citing *Agnello v. United States* (1925), 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145.

{¶ 14} Likewise, we conclude that the inevitable-discovery rule is inapplicable to rehabilitate evidence seized without a warrant. To hold otherwise would justify, if not encourage, warrantless searches and seizures. If the police officer had stayed out of the room and observed the drugs, the evidence would have been admissible, but the fact is that the officer observed the drugs only after he had entered illegally. To allow admission of evidence seized illegally on the basis that the officer could have continued to stand at the doorway and inevitably would have seen the contraband on the dresser would emasculate the requirement for a warrant under the Fourth Amendment. In other words, "the argument that 'if we hadn't done it wrong, we would have done it right' is far from compelling." *State v. Topanotes* (2003), 76 P.3d 1159, quoting *United States v. Thomas* (C.A.4, 1992), 955 F.2d 207. Furthermore, the state produced no evidence of any leads at the time of the illegal entry that would make discovery of the drugs inevitable, as Officer Velez was dispatched only to resolve a disturbance complaint. There was also no alternative line of investigation pursued by the police prior to the illegal entry. Therefore, we find that the inevitable-discovery doctrine does not justify Officer Velez's entry into Keith's room. Because the entry was not lawful, the evidence seized without a warrant must be suppressed.

{¶ 15} The appellant's assignment of error is sustained. The judgment is reversed, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

WOLFF, P.J., and FAIN, J., concur.