[Cite as *State v. Nelms*, 2017-Ohio-1466.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

STATE OF OHIO                              :
                                           :
    Plaintiff-Appellee                 :    Appellate Case No. 27167
                                           :
v.                                         :    Trial Court Case No. 16-CR-47
                                           :
DEVON L. NELMS                             :    (Criminal Appeal from
                                           :     Common Pleas Court)
    Defendant-Appellant                :
                                           :

. . . . . . . . . . .

O P I N I O N

Rendered on the 21st day of April, 2017.

. . . . . . . . . .

MATHIAS H. HECK, JR., by MICHAEL J. SCARPELLI, Atty. Reg. No. 0093662, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45402
    Attorney for Plaintiff-Appellee

CHRISTOPHER W. THOMPSON, Atty. Reg. No. 0055379, Law Office of the Public Defender, 117 South Main Street, Suite 400, Dayton, Ohio 45422
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, P.J.

{¶ 1} Devon Nelms appeals the trial court's overruling of his motion to suppress the illegal drugs found in his vehicle. The vehicle was parked directly in front of a commercial building, and police officers searched the vehicle under a warrant authorizing a search of the building and its "surrounding curtilage." The trial court concluded that the premises search warrant covered the vehicle. We agree, so we affirm.

## I. Background

{¶ 2} Detective Jason Barnes of the Dayton Police Department submitted the affidavit supporting the application for a search warrant. In the affidavit, he describes three controlled heroin buys arranged by the police using a confidential informant. During the first one, Detective Barnes watched a man identified as Jordan Alford drive up in a white Buick Regal and sell the informant heroin. After the sale, Barnes saw the same Buick parked on the premises at 3606 West Third Street in Dayton. During the second buy, Detective Barnes watched the informant buy heroin from an unknown man standing on the street. After the sale, the man got into the white Buick, which was parked on the 3606 West Third Street premises. During the third controlled buy, Detective Barnes was watching the premises at 3606 West Third Street. He saw Alford exit the door on the north side of the building and get into the driver's seat of the parked Buick. While Detective Barnes stayed, Detective Brian Dedrick followed the Buick and saw Alford sell the informant heroin. After the sale, Alford drove the Buick back to 3606 West Third Street, and Detective Barnes saw him again park it on the premises. He saw Alford exit the vehicle and enter the building through the north-side door.

{¶ 3} A warrant was issued on October 26 that authorized a search for, among

other things, illegal drugs, controlled substances, and drug-related paraphernalia. The areas authorized to be searched included the person of Alford and the unidentified male involved in the second controlled buy and the building, a "commercial garage," at 3606 West Third Street and its "surrounding curtilage." On October 29, Detective Barnes, Detective Dedrick, and other police officers executed the warrant. At the suppression hearing, Detective Dedrick testified that he watched the premises for about an hour before they executed the warrant. He saw Nelms's blue two-door Chevrolet Monte Carlo parked in front of the building, next to the door on the building's north side. The vehicle had backed in, and Dedrick said that he saw movement inside. Police were waiting until the occupants of the vehicle got out before executing the warrant. Detective Barnes explained that they were going to execute the warrant two days earlier when the white Buick was there. But while they were preparing the warrant, the Buick left. A marked police cruiser attempted to pull it over, because it was listed on the search warrant, but the Buick refused to stop and fled. The officer did not give chase, and the Buick was not located. So this time, Detective Barnes was not taking any chances. He was waiting until the occupants of the Monte Carlo got out. As they waited and watched, they saw the man in the passenger seat get out to let someone into the car and then get out to let the person out again. This happened several times. Then the vehicle left the premises only to return ten to fifteen minutes later and again back into a parking space beside the entrance door. After a few minutes, Detective Dedrick saw Alford get out of the passenger side and Nelms get out of the driver side and walk into the garage. It was then that the police swooped in with the warrant.

{¶ 4} Detective Barnes testified that initially a protective sweep of the Monte Carlo

was done. The officer who did the sweep found no one inside the vehicle and saw no contraband. Inside the building, police arrested three individuals—Nelms, Wilbur Bolds (the owner of the property), and Alford. Later, Detective Barnes ordered that a full search of Nelms's vehicle be done because it was on the property's "surrounding curtilage." During this search, paperwork in Alford's name was found in the passenger door and cocaine, marijuana, and heroin was found in the center console.

{¶ 5} Nelms was indicted on one count of possession of heroin, one count of possession of cocaine, and one count of possession of marijuana. He moved to suppress the evidence found in his vehicle, arguing that the search was beyond the scope of the warrant. After the suppression hearing, the trial court overruled Nelms's motion to suppress. The court concluded that "the scope of the search warrant was not exceeded." Nelms then pleaded no contest to possession of heroin and possession of cocaine, and the marijuana-possession charge was dismissed. He was sentenced to a total of three years in prison.

{¶ 6} Nelms appealed.

## II. Analysis

{¶ 7} Nelms's sole assignment of error challenges the trial court's suppression decision. "Review of a trial court's ruling on a motion to suppress is 'a mixed question of law and fact.' We accept the trial court's factual findings as long as they are supported by competent, credible evidence. However, we review de novo the application of the law to these facts." (Citations omitted.) *State v. Belton*, Ohio Sup.Ct. Slip Opinion No. 2016-Ohio-1581, ¶ 100, quoting *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

A. *The warrant covered Nelms's vehicle*

**{¶ 8}** The premises search warrant here authorizes a search for illegal drugs and other items in the commercial building at 3606 West Third Street and on its "surrounding curtilage." Nelms argues that the property did not have any curtilage for his vehicle to be on. We have said that "using 'curtilage' in connection with commercial premises is somewhat of a misnomer since the term typically is associated with the yard or enclosed space surrounding a dwelling house." *State v. Trammel*, 2d Dist. Montgomery No. 17196, 1999 WL 22884, *3 (Jan. 22, 1999). Curtilage—the area immediately adjacent to a home which an individual reasonably expects is private—is regarded as " 'part of the home itself for Fourth Amendment purposes.' " *Florida v. Jardines*, _ U.S. _, 133 S.Ct. 1409, 1414, 185 L.Ed.2d 495 (2013), quoting *Oliver v. United States*, 466 U.S. 170, 180, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984). We have said that "the Fourth Amendment applies to commercial premises, and extends to areas that can be equated with the 'curtilage' of a private home." *Trammel* at *6. This area "can include the grounds surrounding the premises, if the premises fit within the traditional Fourth Amendment analysis, i.e., the area is one in which the owner has a reasonable expectation of privacy." *Id.* at *4.

**{¶ 9}** Nelms argues that the owner of the property here did not have a reasonable expectation of privacy in any of the area surrounding the building, because the entire area was open to the public—no fences, hedges, or the like suggested a private area. Certainly, Nelms says, the parking area in front of the building where his vehicle was found was public. But whether the building here actually had curtilage doesn't matter. "Surrounding curtilage" is used in the warrant simply to describe the area around the building. As we have said, in search warrants, " 'curtilage' has been used * * * to designate

the area surrounding a commercial property, whether that area be a parking lot or fenced area." *Trammel* at *4. The key question here is whether the warrant and its terminology permitted the search of Nelms's vehicle.

**{¶ 10}** "Although police may be lawfully on the premises with a valid search warrant, the search is limited to those areas which may reasonably contain the items listed in the warrant." *State v. Halczyszak*, 25 Ohio St.3d 301, 323, 496 N.E.2d 925 (1986), fn. 9. Any container found on the premises may be searched if it could contain the object of the search. *United States v. Ross*, 456 U.S. 798, 820-821, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) (holding that "[a] lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search"). This includes a vehicle. "Ohio appellate courts have recognized that such a warrant [authorizing the search of curtilage] extends to permit search of motor vehicles located within the curtilage of the premises." (Citations omitted.) *State v. Ballez*, 6th Dist. Lucas No. L-10-1012, 2010-Ohio-4720, ¶ 13 (citing cases). This Court in particular has so held. *See State v. Simpson*, 2d Dist. Montgomery No. 19011, 2002 WL 441488 (Mar. 22, 2002) (holding that "surrounding curtilage" in a search warrant for a residence included a vehicle parked in the garage attached to the home). Indeed, courts in most jurisdictions say that vehicles found on the curtilage of a target premises may be searched. 2 Wayne R. LaFave, *Search and Seizure*, Section 4.10(c) (5th Ed.2012) (citing numerous cases). "The assumption [made by these courts] seems to be that a vehicle should be viewed in the same way as any other personal effects found on the described premises." *Id.*

{¶ 11} Typically, a vehicle found on the premises is owned or controlled by the owner of the premises. Few cases address a situation like the one here, a vehicle owned by a visitor found on commercial premises that are the target of a search warrant. Some federal circuit courts say that a premises search warrant also covers a vehicle that *appears* to be owned or controlled by the premises owner. *See, e.g., United States v. Gottschalk*, 915 F.2d 1459, 1461 (10th Cir.1990) (saying that the scope of a premises warrant includes "those vehicles which appear, based on objectively reasonable indicia present at the time of the search, to be so controlled"); *United States v. Patterson*, 278 F.3d 315, 318 (4th Cir.2002) (saying that the scope of a premises warrant includes vehicles on the premises that "reasonably appear" to be controlled by the premises owner). In the case of a warrantless search of a vehicle, the U.S. Supreme Court has said that there is no "distinction among packages or containers based on ownership." *Wyoming v. Houghton*, 526 U.S. 295, 302, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999). If there is probable cause to search the vehicle, held the Court, police "may inspect passengers' belongings found in the car that are capable of concealing the object of the search." *Id.* at 307.

{¶ 12} Following the above approach, we believe that if there is probable cause to search commercial premises—which is the basis on which a warrant for the premises would issue—a vehicle found on the premises may be searched if police officers have reason to believe that the vehicle is associated with the premises. That is the case here. Jordan Alford was involved in three drug sales using a white Buick that he would park in front of the building at 3606 West Third Street. This could be why the search warrant permits the search of not only Alford's person and the building but also the "surrounding

curtilage." As it happened, on the day that police executed the warrant, the white Buick was not there (probably because it had eluded police when an attempt to stop it happened two days earlier) but Alford was. And he spent a lot of time inside another vehicle parked on the premises—Nelms's. The activity around Nelms's vehicle was suspicious, and its leaving and shortly returning was reminiscent of Alford's use of the Buick. The officer reasonably could have believed that Alford was using Nelms's vehicle to sell drugs, just as he had used the Buick.

{¶ 13} We hold that Nelms's vehicle was covered by the search warrant. The trial court found that the vehicle was on the curtilage because it was "parked directly in front of the subject property immediately in front of the door." (Tr. 32). Given where the vehicle was found, we agree that it was in the area described in the warrant as the "surrounding curtilage." And what police saw during the hour they spent watching the premises before executing the warrant gave them reason to believe that Nelms's vehicle was associated with not only the premises but also Alford, who was specifically named as a target of the search.

B. *The search good-faith exception applies*

{¶ 14} Even if Nelms's vehicle were not covered by the warrant, we would conclude that suppression is not appropriate under the good-faith exception to the exclusionary rule.

{¶ 15} "[S]uppression is not an automatic consequence of a Fourth Amendment violation. Instead, the question turns on the culpability of the police and the potential of exclusion to deter wrongful police conduct." *Herring v. United States*, 555 U.S. 135, 137, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009). The good-faith exception applies to police errors

and limits exclusion to those errors that are shown to be more than the result of mere negligence. "To trigger the exclusionary rule," the U.S. Supreme Court has said, "police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Id.* at 144. Sufficiently deliberate and culpable conduct is conduct that is "deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Id.* Here, the police searched Nelms's vehicle under the good-faith belief that it was covered by the warrant. This belief was entirely reasonable. And there is no evidence that the officers conduct reached even the level of mere negligence. Applying the exclusionary rule in this circumstance would not be appropriate.

{¶ 16} The sole assignment of error is overruled.

### III. Conclusion

{¶ 17} We have overruled the assignment of error presented. The trial court's judgment is affirmed.

. . . . . . . . . . . . .

WELBAUM, J. and TUCKER, J., concur.

Copies mailed to:

Mathias H. Heck
Michael J. Scarpelli
Christopher W. Thompson
Hon. Gregory F. Singer