[Cite as *State v. Chavez*, 2018-Ohio-4351.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

STATE OF OHIO                          :
                                       :
    Plaintiff-Appellee             :        Appellate Case No. 27840
                                       :
v.                                     :        Trial Court Case No. 2017-CR-1734/2
                                       :
JULIO C. CHAVEZ                        :        (Criminal Appeal from
                                       :        Common Pleas Court)
    Defendant-Appellant            :
                                       :

. . . . . . . . . . .

O P I N I O N

Rendered on the 26th day of October, 2018.

. . . . . . . . . .

MATHIAS H. HECK, JR., by MICHAEL P. ALLEN, Atty. Reg. No. 0095826, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

ADELINA E. HAMILTON, Atty. Reg. No. 0078595, 117 South Main Street, Suite 400, Dayton, Ohio 45422
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, P.J.

{¶ 1} Defendant-appellant, Julio C. Chavez, appeals from his conviction in the Montgomery County Court of Common Pleas after he pled no contest to possession of marijuana. In support of his appeal, Chavez contends the trial court erred in overruling his motion to suppress the drug evidence at issue. For the reasons outlined below, the judgment of the trial court will be affirmed.

**Facts and Course of Proceedings**

{¶ 2} On July 11, 2017, Chavez was indicted for possession of marijuana in an amount equal to or exceeding 200 grams but less than 1,000 grams, in violation of R.C. 2925.11(A). Following his indictment, Chavez filed a motion to suppress, arguing that an improper search and seizure was conducted in the motel room where the marijuana was found. On September 1, 2017, the trial court held a hearing on Chavez's motion to suppress. At the suppression hearing, the State presented testimony from Sergeant Jennifer Chiles and Officer Timothy Christian of the Vandalia Police Department. The officers testified as follows.

{¶ 3} On May 24, 2017, Officer Christian was monitoring the Super 8 Motel located at 550 East National Road in Vandalia, Montgomery County, Ohio. As part of his regular duties, Christian performed random registration checks on the vehicles parked in the motel parking lot by running the vehicles' license plate information. In doing so, Christian discovered the owner of a green Honda parked in the parking lot, Omar Cardenas, had a warrant for his arrest out of Martinsville, Indiana. The warrant was for possessing marijuana and included a color photograph of Cardenas. The warrant also included

Cardenas's weight, age, and general physical description. The description indicated that Cardenas was a Hispanic male with dark hair.

{¶ 4} After learning of the arrest warrant, Officer Christian made contact with Sergeant Chiles in order to determine whether Cardenas could be picked up on the Indiana warrant given that the warrant had a limited 300-mile pick-up radius. Sergeant Chiles determined Martinsville, Indiana, was 140 miles from Vandalia. As a result, Chiles ordered dispatch to contact the Martinsville Sheriff's Office. After contacting the Martinsville Sheriff's Office, Chiles was informed by dispatch that Cardenas would be extradited to Martinsville if the officers were able to effectuate his arrest.

{¶ 5} After speaking with dispatch, Sergeant Chiles and Officer Christian inquired about Cardenas with the front desk clerk of the Super 8 Motel. The front desk clerk advised the officers that no one with Cardenas's name was registered to a room. However, the clerk indicated that Cardenas's green Honda was registered to Room 131, and that the name registered to Room 131 was Fernandez Ramirez. Sergeant Chiles testified that, in her 20 years of police experience, people commonly use aliases when registering for motel rooms. Accordingly, Chiles testified that, in her mind, she thought Cardenas could be in Room 131 despite the room being registered under a different name. The officers also believed Cardenas was in Room 131 since Cardenas's green Honda was parked directly in front of the door to Room 131.

{¶ 6} As Sergeant Chiles and Officer Christian approached the door to Room 131, they could see that the lights were on by looking through a four-inch opening in the otherwise drawn curtains. Sergeant Chiles testified that, as she stood by the ground-level window to Room 131, she could smell the odor of marijuana emanating from the

room. Since Cardenas's warrant was for possessing marijuana, Chiles testified that the odor of marijuana also led her to believe that Cardenas was in the room.

{¶ 7} Believing Cardenas was in Room 131, Officer Christian began to knock on the motel room door and announce their presence as Vandalia police officers. Shortly thereafter, Sergeant Chiles testified she could see "shadows of movements, like someone was moving around in the room" through the opening in the curtains. Trans. (Sept. 1, 2017), p. 60-61. While standing close to the window at an angle, Sergeant Chiles saw a Hispanic male approach the door and try to look out the peephole, which the officers had blocked for officer safety. Officer Christian testified that Chiles told him the male was making suspicious movements and crouching down.

{¶ 8} Continuing, Sergeant Chiles testified that the male in Room 131 eventually looked through the opening in the curtains and made eye contact with her. Upon making eye contact, Chiles testified that she told the male, later identified as Fernando Ramirez, to "[o]pen the door." *Id.* at 62. In response, Chiles testified Ramirez put his hands up and said: "Don't shoot. Don't shoot me." *Id.* Ramirez then put one hand behind his back while the other hand remained in the air. When Ramirez put his hand behind his back, Sergeant Chiles testified she became concerned that he had a weapon. As a result, Chiles drew her firearm at a "low ready position," meaning that the tip of the gun was pointed at the ground and that Chiles was holding the butt of the gun near her waist. *Id.* at 63.

{¶ 9} After 20 to 30 minutes of knocking on the door and ordering Ramirez to come out of the room, Ramirez opened the door and exited the room. Once Ramirez was outside the room, the officers ordered Ramirez to get on the ground. Ramirez complied

with the officers' order, and Officer Christian handcuffed him. Believing that Ramirez was Omar Cardenas, Sergeant Chiles asked Ramirez: "Omar, is there anyone else in the room?" *Id.* at 65. Ramirez then told Chiles "I'm not Omar." *Id.* At that point, Officer Christian advised Ramirez that he was being detained until his identity could be confirmed.

{¶ 10} While Officer Christian detained Ramirez, Sergeant Chiles observed another Hispanic male sitting on the bed inside Room 131 who resembled Cardenas. Chiles ordered the second male, later identified as Chavez, the appellant in this case, to get out of the room and on the ground. Chavez complied with Chiles's order and was subsequently handcuffed. Believing Chavez was Cardenas, Sergeant Chiles asked Chavez: "Omar, is there anyone else in the room?" Trans. (Sept. 1, 2017), p. 66. Like Ramirez, Chavez stated he was not Cardenas. Officer Christian then told Chavez he was also being detained until they confirmed his identity. Sergeant Chiles recalled either Ramirez or Chavez advising her that Cardenas was his brother. It was later confirmed that Chavez was in fact Cardenas's brother.

{¶ 11} Sergeant Chiles testified that, when she asked Chavez if anyone was else in the room, Chavez "flung his head to the side towards the room, like nodding towards the room and said something to the effect of look for yourself or go see for yourself." *Id.* at 67. Chiles testified that she took this as permission to enter the motel room. Chiles then entered the room to look for Cardenas and to conduct a protective sweep for officer safety since she did not know how many people were in the room. Chiles testified that she only searched in the areas where she could not see and where a person could be hiding, such as in the space between the two beds and in the bathroom, as the bathroom

door was shut.

{¶ 12} After clearing the area between the beds, Sergeant Chiles attempted to open the bathroom door, but met resistance.  Because she was the lone officer in the room and did not know whether the resistance was caused by someone pushing on the door, Chiles backed out of the room for her safety and called for an additional officer to assist with clearing the bathroom.  Thereafter, Officers Christian and Sommer opened the bathroom door while Chiles remained with Ramirez and Chavez.  Upon opening the bathroom door, the officers observed that the toilet was full of marijuana and that the resistance they had met was due to a large duffle bag on the floor containing marijuana.  No one was discovered inside the bathroom.

{¶ 13} After discovering the marijuana, the officers cleared the room.  The officers, however, did not collect the marijuana until after a search warrant was secured.  Chavez and Ramirez were then placed under arrest for possession of marijuana and Mirandized by Sergeant Chiles.

{¶ 14} In light of the officers' testimony, the trial court held that the entry and search of the motel room in question was lawful.  In so holding, the trial court found the issue of whether Chavez consented to the officers' entrance into the motel room was irrelevant since the officers were armed with an arrest warrant for Cardenas and had probable cause to believe Cardenas was inside the room.  As a result, the trial court overruled Chavez's motion to suppress.

{¶ 15} After the court overruled Chavez's motion to suppress, Chavez pled no contest to the indicted charge for possessing marijuana.  The trial court then found Chavez guilty of the charge and sentenced him to a period of community control not to

exceed five years.   Chavez now appeals from his conviction, raising a single assignment of error for review.

**Assignment of Error**

{¶ 16} Chavez's sole assignment of error is as follows:

THE TRIAL COURT ERRED TO DEFENDANT-APPELLANT'S PREJUDICE WHEN IT OVERRULED HIS MOTION TO SUPPRESS.

{¶ 17} Under his single assignment of error, Chavez contends the trial court erred in failing to suppress the drug evidence discovered in the motel room.   In support of this argument, Chavez claims his Fourth Amendment protection against unreasonable searches and seizures was violated when the officers: (1) entered his motel room to execute an arrest warrant for Cardenas without a reasonable belief that Cardenas was inside the motel room; (2) conducted a protective sweep of his motel room without an arrest being made; (3) peered into the window of his motel room; and (4) failed to obtain valid consent to enter his motel room.   We disagree with Chavez's claims.

*Standard of Review*

{¶ 18} "In ruling on a motion to suppress, the trial court 'assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses.' "   *State v. Prater*, 2012-Ohio-5105, 984 N.E.2d 36, ¶ 7 (2d Dist.), quoting *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994).   "As a result, when we review suppression decisions, 'we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence.

Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard.' " *Id.*, quoting *Retherford*.

*Entry into Motel Room*

**{¶ 19}** For his first argument, Chavez contends his Fourth Amendment rights were violated when the officers entered the motel room to execute an arrest warrant for Cardenas. Chavez claims the arrest warrant did not permit the officers to enter the room because the officers did not have a reasonable belief that Cardenas was in the room. According to Chavez, a search warrant was required for the officers to lawfully enter his room.

**{¶ 20}** "The Fourth Amendment generally prohibits police from making a warrantless, nonconsensual entry into a suspect's home to make a felony arrest." *State v. Cooks*, 2d Dist. Clark No. 2016-CA-40, 2017-Ohio-218, ¶ 10, citing *Payton v. New York*, 445 U.S. 573, 588-589, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). It is well established that the protection provided by the Fourth Amendment extends to hotel rooms. *Hoffa v. United States*, 385 U.S. 293, 301, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), citing *United States v. Jeffers*, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951). ("[a] hotel room can clearly be the object of Fourth Amendment protection as much as a home or an office"). *Accord State v. Keith*, 178 Ohio App.3d 46, 2008-Ohio-4326, 896 N.E.2d 764, ¶ 7 (2d Dist.) ("[t]he sanctity of the home extends to any area where one has a legitimate and reasonable expectation of privacy, including a motel room").

**{¶ 21}** In *Payton*, the United States Supreme Court held that "an arrest warrant

founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton* at 603. " 'Accordingly, pursuant to *Payton*, an arrest warrant is sufficient to enter a person's residence to effectuate the warrant if the police have reason to believe that the suspect lives in the home and is in fact at the home at the time the arrest warrant is executed.' " *Cooks* at ¶ 10, quoting *State v. Zerucha*, 11th Dist. Ashtabula No. 2015-A-0031, 2016-Ohio-1300, ¶ 13. (Other citation omitted.) "The protections against warrantless intrusions into the home announced in *Payton* * * * apply with equal force to a properly rented hotel room during the rental period." *United States v. Junkman*, N.D. Iowa No. CR96-4033, 1997 WL 33559171, *3 (June 24, 1997), citing *United States v. Rambo*, 789 F.2d 1289, 1295 (8th Cir.1986) and *United States v. Wicks*, 995 F.2d 964, 969 (10th Cir.1993).

{¶ 22} Following its decision in *Payton*, the Supreme Court held in *Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), that absent exigent circumstances or consent, an arrest warrant does not justify entry into a third person's home to search for the subject of the arrest warrant. Under *Steagald*, "a search warrant must be obtained in order to seek out the subject of an arrest warrant on the property of a third party." *State v. Pembaur*, 9 Ohio St.3d 136, 138, 459 N.E.2d 217 (1984), citing *Steagald*. The *Steagald* court expressly noted that it was not deciding "whether the subject of an arrest warrant can object to the absence of a search warrant when he is apprehended in another person's home, but rather whether the residents of that home can complain of the search." *Steagald* at 219.

{¶ 23} In situations involving hotel and motel rooms, federal courts have held that

when the person named in the arrest warrant is merely a guest of the registered tenant of a hotel room, pursuant to *Steagald*, a search warrant is necessary to gain entrance into the room absent consent or exigent circumstances. *Junkman* at *4; *United States v. Ray*, 9th Cir. Nos. 93-10102, 93-10142, 93-10207, 1994 WL 134259, *2-3 (Apr. 13, 1994). In contrast, if the person named in the arrest warrant is a tenant taking up residence in the hotel room, *Steagald* does not apply and *Payton* permits the officers to enter the room to effectuate the arrest warrant if they have a reasonable belief that the person named in the arrest warrant is a tenant and present inside the room. *See Payton*, 445 U.S. 573, 603, 100 S.Ct. 1371, 63 L.Ed.2d 639.

{¶ 24} Chavez relies on *Steagald* for the proposition that the officers needed a search warrant to enter the motel room in question. This is correct only if the officers had a reasonable belief that Cardenas was merely a guest of the room's tenants. *See Junkman* at *4 and *Ray* at *3. However, if the officers had a reasonable belief that Cardenas was a tenant present inside the motel room, the arrest warrant would be sufficient for the officers to lawfully enter the room in an attempt to arrest Cardenas.

{¶ 25} "Reasonable belief is established by looking at common sense factors and evaluating the totality of the circumstances." (Citations omitted.) *United States v. Pruitt*, 458 F.3d 477, 482 (6th Cir.2006). "[A] reasonable belief is something less than probable cause." *Cooks*, 2d Dist. Clark No. 2016-CA-40, 2017-Ohio-218, at ¶ 11, citing *Pruitt* at 482-485. "Therefore, police officers do not need probable cause to enter a residence to execute an arrest warrant provided they have a reasonable belief, founded in common sense and based on the totality of the circumstances, that the suspect resides in the home and that he is present at the time." *Id.*, citing *Barrett v. Kentucky*, 470 S.W.3d 337, 343

(Ky S.Ct.2015).

{¶ 26} Under the totality of the circumstances, we find that Sergeant Chiles and Officer Christian had a reasonable belief that the subject of the arrest warrant, Omar Cardenas, was inside Room 131 of the Super 8 Motel on the night in question. It was reasonable for the officers to believe that Cardenas was inside the room since the officers saw a vehicle registered in Cardenas's name parked directly outside the room. The officers also knew that Cardenas's arrest warrant was for possessing marijuana, and Sergeant Chiles smelled the odor of marijuana emanating from Room 131. Sergeant Chiles specifically testified that, given the nature of the arrest warrant, smelling the marijuana led her to believe that Cardenas was inside the room. We find that such a belief was reasonable.

{¶ 27} In addition to seeing Cardenas's vehicle parked outside the motel room and smelling marijuana, Sergeant Chiles observed a male matching the general physical description of Cardenas suspiciously moving around inside the motel room. According to Chiles, the male was crouching down and attempting to look through the peephole while Officer Christian was knocking on the door for 20 to 30 minutes. The suspicious movements made in response to the officers knocking and announcing their presence, coupled with the 20-30-minute delay in answering the door, supported a common-sense inference that the male was attempting to avoid police contact. Because Cardenas had a warrant for his arrest, it was reasonable for the officers to believe that the male attempting to avoid police contact was Cardenas.

{¶ 28} Although it is a closer call, we also find that Sergeant Chiles and Officer Christian had a reasonable belief that Cardenas was a tenant residing in Room 131.

Such a belief was reasonable since the front desk clerk of the motel advised the officers that Cardenas's vehicle was registered to Room 131. Although the name supplied for Room 131 was Fernandez Ramirez, Sergeant Chiles testified that, based on her 20 years of law enforcement experience, it is common for people to use aliases when registering for motel rooms. In light of that fact, and the fact that Cardenas's vehicle was registered to the motel room in question, it was reasonable for the officers to believe that Cardenas was a tenant staying in the room.

{¶ 29} Because they had an arrest warrant for Cardenas and a reasonable belief that Cardenas was a tenant present inside of the motel room, the officers were constitutionally permitted to enter the room to effectuate Cardenas's arrest. Accordingly, Cardenas's first argument in support of his motion to suppress lacks merit.

*Protective Sweep of Motel Room*

{¶ 30} For his second argument, Chavez contends the protective sweep of the motel room was unlawful because no arrest had been made at the time the sweep was conducted. Chavez also contends that the protective sweep was unlawful because the officers had no basis to believe that Cardenas was inside the motel room.

{¶ 31} In *Maryland v. Buie*, 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990), the United States Supreme Court defined a protective sweep as "a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." *Id.* at 327. The Court held that such protective sweeps are permitted when officers possess "a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene."

*Id.* at 337. "The scope of the protective sweep must not exceed that reasonably necessary to protect the safety of the officers." *State v. Lyons*, 83 Ohio App.3d 525, 534, 615 N.E.2d 310 (2d Dist.1992).

{¶ 32} A majority of federal circuit courts have extended the protective sweep doctrine to cases where officers possess a reasonable suspicion that their safety is at risk, even in the absence of an arrest. *See, e.g., United States v. Taylor*, 248 F.3d 506, 513-514 (6th Cir.2001); *United States v. Miller*, 430 F.3d 93, 98-99 (2d Cir.2005); *United States v. Cisneros-Gutierrez*, 598 F.3d 997, 1006-1007 (8th Cir.2010); *United States v. Werra*, 638 F.3d 326, 350-351 (1st Cir.2011); *United States v. Gould*, 364 F.3d 578, 584 (5th Cir.2004); *Leaf v. Shelnutt*, 400 F.3d 1070, 1086-1087 (7th Cir.2005). The Supreme Court of Ohio has also taken this position, as it held that "[p]olice officers can conduct a protective sweep without making an arrest if circumstances warrant." *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 188, citing *Cisneros-Gutierrez* at 1006-1007 and *Taylor* at 513-514.

{¶ 33} Based on the foregoing case law, Chavez's claim that the protective sweep was unlawful because it was not made incident to an arrest lacks merit. As noted above, in order for the protective sweep to have been lawful, the officers simply must have had a reasonable belief that the motel room harbored an individual posing a danger to the officer or others. *Buie* at 337. Chavez's claim otherwise lacks merit.

{¶ 34} In addressing Chavez's first argument, we have already determined that Sergeant Chiles and Officer Christian reasonably believed that Cardenas, an individual with an arrest warrant, was inside the motel room. Furthermore, "[w]hen officers have obtained an arrest warrant and they have reason to believe that the suspect is inside the

house, they may search anywhere that the suspect might reasonably be found." *United States v. Stover*, 474 F.3d 904, 911 (6th Cir.2007), citing *Buie* at 332-333.

{¶ 35} Here, after Chavez and Ramirez exited the hotel room and advised the officers they were not Cardenas, the officers were located in a position where certain areas of the hotel room were not visible, areas where Cardenas could have been hiding. For example, Sergeant Chiles testified that she could not see the space between the two beds or inside the bathroom. Because the arrest warrant permitted the officers to search anywhere in the motel room where Cardenas could have been found, it was not unlawful for the officers to enter the room and search those areas.

{¶ 36} As a further matter, the officers testified that they met resistance when they attempted to open the bathroom door. Not knowing whether the resistance was caused by an individual pushing on the bathroom door, or some other less nefarious obstruction, the officers cleared the bathroom to determine whether Cardenas or some other individual was inside. Given the resistance on the door and the fact that Cardenas had not been located, it was reasonable for the officers to believe that someone posing a danger to the officers could have been inside the bathroom.

{¶ 37} The fact that the sweep of the motel room did not reveal Cardenas has no bearing on whether the officers were justified in entering the motel room and conducting the sweep. *See United States v. Lawlor*, 406 F.3d 37, 42, fn. 5 (1st Cir.2005), citing *Buie*, 494 U.S. at 335-336, 110 S.Ct. 1093, 108 L.Ed.2d 276. "While it is true that the officers could not be certain that a threat existed inside the [motel room], this does not impugn the reasonableness of their taking protective action." *United States v. Henry*, 48 F.3d 1282, 1284 (D.C. Cir.1995). "It is enough that they 'have a reasonable basis for

believing that their search will reduce the danger of harm[.]" *Id.*, quoting *Buie* at 337 (Stevens, J., concurring).

{¶ 38} For the foregoing reasons, Chavez's second argument in support of his motion to suppress lacks merit.

*Peering into Window*

{¶ 39} For his third argument, Chavez contends the officers violated his Fourth Amendment rights by peering into his motel room window and curtains. In support of this argument, Chavez claims the area around the motel window is curtilage, which carries a reasonable expectation of privacy that the officers violated.

{¶ 40} Chavez did not raise this argument in his motion to suppress or at the suppression hearing. As a result, the trial court did not address this issue. By failing to raise this issue before the trial court, Chavez has waived the argument for appeal. " 'It is settled law that issues raised for the first time on appeal and not having been raised in the trial court are not properly before this court and will not be addressed." (Citations omitted.) *State v. Schneider,* 2d Dist. Greene No. 95-CA-18, 1995 WL 737910, *1 (Dec. 13, 1995).

{¶ 41} Regardless, even if Chavez had raised the issue, it is questionable whether the officers' act of peering in the window violated a reasonable expectation of privacy in curtilage. This court has noted that using the term " 'curtilage' in connection with commercial premises is somewhat of a misnomer since the term typically is associated with the yard or enclosed space surrounding a dwelling house." (Citation omitted.) *State v. Trammel*, 2d Dist. Montgomery No. 17196, 1999 WL 22884, *3 (Jan. 22, 1999).

Curtilage—the area immediately adjacent to a home which an individual reasonably expects is private—is regarded as " 'part of the home itself for Fourth Amendment purposes.' " *Florida v. Jardines*, 569 U.S. 1, 6, 133 S.Ct. 1409, 185 L.Ed.2d 495 (2013), quoting *Oliver v. United States*, 466 U.S. 170, 180, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984).

{¶ 42} Nevertheless, we have noted that the term " 'curtilage' has been used in search warrant situations to designate the area surrounding a commercial property, whether that area be a parking lot or fenced area." *Trammell* at *4, citing *State v. Zinmeister*, 27 Ohio App.3d 313, 320-21, 501 N.E.2d 59 (8th Dist.1985) and *State v. Am. Veterans Post No. 250*, 37 Ohio App.3d 108, 524 N.E.2d 191 (9th Dist.1987). Regardless of the designation, we have held that "the Fourth Amendment applies to commercial premises, and extends to areas that can be equated with the 'curtilage' of a private home." *Trammel* at *6. *Accord State v. Nelms*, 2017-Ohio-1466, 81 N.E.3d 508, ¶ 8 (2d Dist.). This area "can include the grounds surrounding the premises, if the premises fit within the traditional Fourth Amendment analysis, i.e., the area is one in which the owner has a reasonable expectation of privacy." (Citation omitted.) *Trammell* at *4.

{¶ 43} A reasonable expectation of privacy is present when there is a subjective expectation of privacy that society is prepared to recognize as reasonable. *State v. Little*, 183 Ohio App.3d 680, 2009-Ohio-4403, 918 N.E.2d 230, ¶ 18 (2d Dist.); *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring). There are several cases indicating that there is no reasonable expectation of privacy in common areas outside motel rooms. *United States v. Diaz*, 25 F.3d 392, 396 (6th Cir.1994) (no reasonable expectation of privacy in motel parking lot); *United States v.*

*Marlar*, 828 F.Supp. 415, 419 (N.D.Miss.1993) (canine sniff of an exterior motel room door opening onto a public sidewalk and parking lot did not intrude on defendant's reasonable expectation of privacy); *United States v. Conner*, 948 F.Supp. 821, 839 (N.D.Iowa 1996) (no reasonable expectation of privacy in sidewalk/windowsill area of motel room where officer observed contraband in the window between curtains); *Ponce v. Craven*, 409 F.2d 621, 625 (9th Cir.1969) (no reasonable expectation of privacy where officers observed activities through hotel room window).

{¶ 44} However, as relevant to the facts and circumstances here, several cases note the significance of closing a window's blinds or curtains. *United States v. Gori*, 230 F.3d 44, 51 (2d Cir.2000) ("Fourth Amendment privacy interests are most secure when an individual is at home with doors closed and curtains drawn tight"); *United States v. Honore*, 450 F.2d 31, 33 (9th Cir.1971) (no illegal search where visual observations of objects within residence were through *uncurtained* window from public stairway); *Pate v. Municipal Court*, 11 Cal.App.3d 721, 724, 89 Cal.Rptr. 893 (1970) ("[c]learly, by drawing the curtains on the window of a motel room which was located on the second floor of the building and at a considerable distance from any public vantage point, appellants exhibited a reasonable expectation of privacy"); *United States v. Dimick*, 790 F.Supp. 1543, 1549 (D.Colo.1992) ("[c]urtains can be drawn, so that activities inside are not exposed to public view"); *Ponce* at 625 (noting that if defendant did not wish to be observed through the hotel window he could have drawn his blinds).

{¶ 45} In this case, the area from where the officers looked through the motel room window was the public sidewalk located directly in front of Chavez's ground-level motel room. Any person walking past Room 131 could have peered into Chavez's motel room

window. We note that Sergeant Chiles testified that she had to stand close to the window at an angle to see through the four-inch opening in the window's curtains. However, since Chavez waived this argument for appeal, we need not delve into what significance, if any, the four-inch opening in the curtains or Chiles's positioning has on this issue.

{¶ 46} Even if we were to find that Chavez's reasonable expectation of privacy was violated when Sergeant Chiles peered through the four-inch opening in the curtains, Chavez fails to indicate what evidence he wishes to have suppressed as a result of the Chiles's conduct. None of the officers observed any contraband as a result of peering through the motel window. Rather, all the contraband at issue was discovered when the officers lawfully entered the motel room and searched the bathroom for Cardenas. Therefore, Chavez cannot demonstrate any prejudice. For this reason, Chavez's third argument in support of his motion to suppress lacks merit.

*Consent to Enter Motel Room*

{¶ 47} For his fourth argument, Chavez contends he did not voluntarily consent to the officers' entrance into his motel room and that his alleged consent cannot be used as justification for the officers' entry and search of the motel room. The trial court found, and we agree, that whether Chavez consented to the officers entering his motel room is irrelevant, because the officers were permitted to enter the motel room by virtue of the arrest warrant for Cardenas. Because the officers had a reasonable belief that Cardenas was a tenant present inside the motel room, the officers were permitted to enter the room and search for Cardenas. For this reason, Chavez's fourth argument in support of his motion to suppress lacks merit.

**Conclusion**

**{¶ 48}** Having found no merit to any of Chavez's arguments, his single assignment of error is overruled and the judgment of the trial court overruling his motion to suppress is affirmed.

. . . . . . . . . . . . .

TUCKER, J., concurs.

DONOVAN, J., dissenting:

**{¶ 49}** I dissent.   In my view, the officers' entry into the motel room registered to Fernandes Ramirez and occupied by Chavez was unlawful.   The fact that the police were aware of an arrest warrant for Cardenas did not give them authority to enter the motel room and search for him pursuant to *Steagald*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38.   In the absence of consent or exigent circumstances,[1] an arrest warrant does not authorize officers to enter the residence of a third party to seize the person named in the warrant.   *Id.*; *Minnesota v. Carter*, 525 U.S. 83, 100, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998); *see State v. Martin*, 151 Ohio St.3d 740, 2017-Ohio-7556, 90 N.E.3d 857, ¶ 78. To enter the home of a third party to make an arrest, officers are required to obtain a search warrant.   *Steagald* at 214-215; *Martin* at ¶ 78 ("[A]n arrest warrant does not authorize police to enter the premises of a third party to arrest the subject of the warrant. For that, they must obtain a search warrant unless an exception to the warrant justifies

---

[1] Exigent circumstances include a limited number of emergency situations, such as immediate danger of injury to others, a need to provide immediate aid, evidence of flight, imminent destruction of contraband, or hot pursuit of a fleeing felon. *E.g., State v. Pinson*, 2d Dist. Montgomery No. 20927, 2005-Ohio-4532, ¶ 18; *Trammel*, 2d Dist. Montgomery No. 17196, 1999 WL 22884, * 7.

entry.").

{¶ 50} Chavez had a reasonable expectation of privacy in the motel room and thus, the right not to answer the door while the police stood outside knocking for 20 minutes. His co-occupant, Ramirez, as the registered guest, likewise chose not to answer the door. During this time frame, the police could have ostensibly obtained a search warrant for the room had they possessed probable cause to believe Cardenas was harbored therein.

{¶ 51} Likewise, any protective sweep analysis must fail, as there is simply no evidence that the motel room harbored an individual posing danger to the officers or others. They simply cannot create an exigency by refusing to leave when the registered guest of a motel room declines to answer the door. "That they did not know whether anyone else was inside is insufficient to justify their entry." *State v. Sharpe*, 2d Dist. Clark No. 2007 CA 46, 2008-Ohio-267, at ¶ 51.

{¶ 52} To protect third parties, in this case, Chavez (as well as Ramirez), according to the logic of *Steagald*, it must be a judicial officer, not a police officer on the scene, who decides whether there is reason to believe that a wanted felon is cohabitating and present in a motel room. Otherwise there is no detached scrutiny by a judicial officer and Chavez's Fourth Amendment rights are protected only by an officers' personal determination of probable cause. The search for an object inside a home (or motel room) requires a search warrant, and the *Steagald* court saw "no reason to depart from this settled course when the search is for a person rather than an object." *Steagald*, 451 U.S. at 214, 101 S.Ct 1642, 68 L.Ed.2d 38.

{¶ 53} I would reverse.

Copies sent to:

Mathias H. Heck, Jr.
Michael P. Allen
Adelina E. Hamilton
Hon. Michael W. Krumholtz